# DULL *v.* BLACKMAN.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 192. Argued January 18, 19, 1898. — Decided February 21, 1898.

On June 25, 1889, plaintiff in error, Daniel Dull, being the owner of the tract of land in controversy, conveyed the same by warranty deed executed by himself and wife to John E. Blackman. Blackman, on August 2, 1889, made a deed of the same land to George F. Wright as security for moneys to be advanced by Wright. On the 29th of February, 1892, Blackman commenced this suit in the District Court of Pottawattamie County, Iowa, to compel a reconveyance by Wright on the ground of his failure to advance any money. Prior thereto, and on January 30, 1892, Blackman had executed a deed of the land to Edward Phelan, which conveyance was at first conditional but by agreement signed by the parties on September 15, 1892, was made absolute. On the 17th of September, 1892, Phelan filed his petition of intervention, setting forth his rights in the matter under the deed of January 30 and the agreement of September 15, and also making plaintiffs in error and others defendants, alleging that they claimed certain interests in the property, and praying a decree quieting his title as against all. On January 24, 1893, plaintiff's counsel withdrew his appearance for Blackman, and, upon his application, was allowed to prosecute the action in the name of Blackman for and in behalf of Phelan, the intervenor. On February 2, 1893, the plaintiffs in error appeared in the suit and filed an answer denying all the allegations in plaintiff's petition and in the petition of intervention. On the 15th of that month they filed an amended answer and a cross petition, in which they set up that Blackman had obtained his deed from them by certain false representations, and that a suit was pending in the Supreme Court of the State of New York, in which Daniel Dull was plaintiff, and Blackman, Wright, Phelan and others were defendants, in which the same issues were made and the same relief sought as in the case at bar. On May 29 they filed an amendment to their answer and cross petition setting forth that the case pending in the Supreme Court of New York had gone to decree, and attached a copy of that decree. The suit in the Supreme Court of the State of New York was commenced on the 3d of November, 1892. Blackman was served personally within the limits of that State, but the other defendants therein, Wright, Phelan and Duffie their counsel, were served only by delivering to them in Omaha, Nebraska, a copy of the complaint and summons. No appearance was made by them, notwithstanding which the decree was entered against them as against Blackman, and was a decree establishing the title of Daniel Dull, setting aside the deed made by him and his wife to Blackman, and enjoining the several defendants from further prosecut-

ing the action in the Iowa court. After certain other pleadings and amendments thereto had been made the case in the District Court of Pottawattamie County, Iowa, came on for hearing, and upon the testimony that court entered a decree quieting Phelan's title to the land as against any and all other parties to the suit, subject, however, to certain mortgage interests which were recognized and protected, but which are not in any way pertinent to this controversy between Dull and wife and the defendants in error. On appeal to the Supreme Court of the State such decree was, on January 21, 1896, affirmed. *Held*, that the decree of the Supreme Court of Iowa was right, and that it should be affirmed.

THE facts in this case are as follows: On June 25, 1889, plaintiff in error, Daniel Dull, being the owner of the tract of land in controversy, conveyed the same by warranty deed executed by himself and wife to John E. Blackman. Blackman, on August 2, 1889, made a deed of the same land to George F. Wright as security for moneys to be advanced by Wright. On the 29th of February, 1892, Blackman commenced this suit in the District Court of Pottawattamie County, Iowa, to compel a reconveyance by Wright on the ground of his failure to advance any money. Prior thereto, and on January 30, 1892, Blackman had executed a deed of the land to Edward Phelan, which conveyance was at first conditional but by agreement signed by the parties on September 15, 1892, was made absolute. On the 17th of September, 1892, Phelan filed his petition of intervention, setting forth his rights in the matter under the deed of January 30 and the agreement of September 15, and also making plaintiffs in error and others defendants, alleging that they claimed certain interests in the property, and praying a decree quieting his title as against all. On January 24, 1893, plaintiff's counsel withdrew his appearance for Blackman, and, upon his application, was allowed to prosecute the action in the name of Blackman for and in behalf of Phelan, the intervenor. On February 2, 1893, the plaintiffs in error appeared in the suit and filed an answer denying all the allegations in plaintiff's petition and in the petition of intervention. On the 15th of that month they filed an amended answer and a cross petition, in which they set up that Blackman had obtained his deed from them by certain false representations, and that a suit

was pending in the Supreme Court of the State of New York, in which Daniel Dull was plaintiff, and Blackman, Wright, Phelan and others were defendants, in which the same issues were made and the same relief sought as in the case at bar. On May 29 they filed an amendment to their answer and cross petition setting forth that the case pending in the Supreme Court of New York had gone to decree, and attached a copy of that decree. The suit in the Supreme Court of the State of New York was commenced on the 3d of November, 1892. Blackman was served personally within the limits of that State, but the other defendants therein, Wright, Phelan and Duffie their counsel, were served only by delivering to them in Omaha, Nebraska, a copy of the complaint and summons. No appearance was made by them. Notwithstanding which the decree was entered against them as against Blackman, and was a decree establishing the title of Daniel Dull, setting aside the deed made by him and his wife to Blackman, and enjoining the several defendants from further prosecuting the action in the Iowa court. After certain other pleadings and amendments thereto had been made the case in the District Court of Pottawattamie County, Iowa, came on for hearing, and upon the testimony that court entered a decree quieting Phelan's title to the land as against any and all other parties to the suit, subject, however, to certain mortgage interests which were recognized and protected, but which are not in any way pertinent to this controversy between Dull and wife and the defendants in error. On appeal to the Supreme Court of the State such decree was, on January 21, 1896, affirmed, from which judgment of affirmance plaintiffs in error have brought the case here.

*Mr. Alfred G. Safford* and *Mr. Isaac N. Flickinger* for plaintiffs in error. *Mr. Omri F. Hibbard* was on their brief.

*Mr. Winfield S. Strawn* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The contention of the plaintiffs in error, and in it is the only question of a Federal nature presented by the record, is that the courts in Iowa did not give that full faith and credit to the decree rendered in the Supreme Court of the State of New York to which under the Constitution of the United States it was entitled. From the foregoing statement of facts it appears clearly that although the suit in the Iowa court was originally commenced by Blackman, and though his name was, under the practice prevailing in Iowa, never dropped from the title of the case, it was by reason of the intervention of Phelan and the orders of the court simply prosecuted in his name for the benefit of Phelan, the intervenor; that this intervention of Phelan, and his petition in support thereof, making the plaintiffs in error and others defendants thereto, was filed on the 17th of September, 1892, nearly two months before the commencement of the suit in New York. It also appears that while Blackman, Phelan, Wright and others were named as parties defendant to the suit in New York, Blackman was the only one served within the territorial jurisdiction, and the only one appearing in that court. The other defendants were attempted to be brought in by service of summons in the State of Nebraska, and never entered any appearance in the suit. It is true the decree in the Supreme Court of the State of New York was entered before the trial of this case in the District Court of Iowa, and the record of the proceedings in the New York court was in evidence at the trial in the Iowa court. It further appears from the findings of fact made by the trial court in Iowa, and sustained by the Supreme Court of that State, that the entire right and title had passed from Blackman to Phelan in September, 1892, nearly two months before the commencement of the suit in New York.

Upon these facts we remark that as the land, the subject-matter of this controversy, was situate in Iowa, litigation in respect to its title belonged properly to the courts within that State, *Ellenwood* v. *Marietta Chair Co.*, 158 U. S. 105, 107, although if all the parties interested in the land were brought personally before a court of another State, its decree would be

conclusive upon them and thus in effect determine the title. The suit in New York was one purely *in personam*. Any decree therein bound simply the parties before the court and their privies, and did not operate directly upon the lands. As said by this court in *Carpenter* v. *Strange*, 141 U. S. 87, 105:

"The real estate was situated in Tennessee and governed by the law of its situs, and while by means of its power over the person of a party a court of equity may in a proper case compel him to act in relation to property not within its jurisdiction, its decree does not operate directly upon the property nor affect the title, but is made effectual through the coercion of the defendant, as, for instance, by directing a deed to be executed or cancelled by or on behalf of the party. The court has no 'inherent power, by the mere force of its decree, to annul a deed or to establish a title.'"

In that suit the only party defendant subject to the jurisdiction of the court was Blackman. The other parties were not served with process within the limits of the State of New York and never entered any appearance in the case. The service attempted to be made by delivering a copy of the summons to them in the State of Nebraska was ineffectual to bring them within the jurisdiction of that court.

"Where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service in this form upon a nonresident is ineffectual for any purpose. Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability. *Pennoyer* v. *Neff*, 95 U. S. 714, 727.

"Such a decree, being *in personam* merely, can only be supported, against a person who is not a citizen or resident of the

State in which it is rendered, by actual service upon him within its jurisdiction." *Hart* v. *Sansom*, 110 U. S. 151, 155.

We remark again that while a judgment or decree binds not merely the party or parties subject to the jurisdiction of the court but also those in privity with them, yet that rule does not avail the plaintiffs in error, for Phelan acquired his rights prior to the institution of the suit in New York and was therefore not privy to that judgment.

"It is well understood, though not usually stated in express terms in works upon the subject, that no one is privy to a judgment whose succession to the rights of property thereby affected, occurred previously to the institution of the suit. A tenant in possession prior to the commencement of an action of ejectment cannot therefore be lawfully dispossessed by the judgment unless made a party to the suit. . . . No grantee can be bound by any judgment in an action commenced against his grantor subsequent to the grant, otherwise a man having no interest in property could defeat the estate of the true owner. The foreclosure of a mortgage, or of any other lien, is wholly inoperative upon the rights of any person not a party to the suit, whether such person is a grantee, judgment creditor, attachment creditor, or other lienholder." Freeman on Judgments, (1st ed.,) § 162.

As Phelan was not brought within the jurisdiction of the New York court, and as the suit in that court was instituted nearly two months after he had acquired full title to the real estate, the decree of that court did not bind him as a party, nor bind him as in privity with Blackman, his grantor. The Supreme Court of Iowa did not err in so holding.

The decree is

*Affirmed.*