## M. B. FAHEY TOBACCO CO. v. SENIOR et al.

(District Court, E. D. Pennsylvania. December 22, 1917.)

No. 1483.

1. TRADE-MARKS AND TRADE-NAMES ⬅10—UNFAIR COMPETITION—RIGHT TO USE TRADE-NAME.

Every one, in the absence of self-imposed restraint, has a right to use his own name in his own business, in connection with the sale of articles manufactured and prepared or selected by him, by way of advertising the same, provided he does so without intent to perpetrate a fraud on others, or indulge in unfair competition.

2. TRADE-MARKS AND TRADE-NAMES ⬅23—UNFAIR COMPETITION—APPROPRIATION OF NAME OF ANOTHER.

No one can, by merely adopting and appropriating the personal name of another, without the consent of the latter, acquire as against him an exclusive right to the use of that name in connection with the sale of articles of the class to which it has been applied.

3. TRADE-MARKS AND TRADE-NAMES ⬅68—UNFAIR COMPETITION—APPROPRIATION OF NAME OF ANOTHER.

No one can acquire an exclusive right as against a competitor in business by appropriating his name, different from his own, to be applied in the common business, without the consent of the business competitor, and the use of a fanciful design, peculiar style of lettering or ornamentation, or other distinguishing marks on the label bearing the name, is immaterial; and hence, though one may adopt and apply his own portrait as a trade-mark for goods manufactured, prepared, or selected and

sold by him, he is not to be permitted to apply the portrait of a competitor in business to similar goods without the consent of the latter, and in case of consent only to the extent assented to.

4. TRADE-MARKS AND TRADE-NAMES ☞21—EXCLUSIVE RIGHT TO TRADE-MARKS—ACQUISITION.

It is the use and not the invention of a trade-mark that creates the exclusive right, but a trade-mark actually applied for the first time by a manufacturer to articles made and sold by him to a dealer is not necessarily the property of the manufacturer; for, if it be applied at the request and with the authority of the dealer, to be used in connection with his sales, the manufacturer may be treated as the agent of the dealer.

5. TRADE-MARKS AND TRADE-NAMES ☞72—USE—RIGHT TO USE.

A cigar dealer, enjoying much popularity in the county in which he did business, by arrangement with the defendant, who was a manufacturer of cigars doing business elsewhere, used on boxes of cigars manufactured for him by the defendant, a label bearing a cut of his head and face, together with his name. The preparation and printing of the labels was paid for by the manufacturer. After the death of the cigar dealer the business and good will were transferred by his personal representatives to complainant's predecessors, and by them transferred to complainant. During the interval between the death of the cigar dealer and the acquisition of the business and good will by the complainant, defendant manufactured cigars for complainant's predecessors bearing such labels. *Held* that, though the dealer allowed the defendant to prepare such labels and affix them to cigars manufactured for the former, it cannot be assumed that he gave defendant an absolute and unqualified right to use such labels in selling cigars, and, as the right to use such labels passed to the complainant, defendant is not entitled, after the expiration of the arrangement between himself and complainant and its predecessors, without the complainant's consent, to use them on cigars not manufactured for it.

6. TRADE-MARKS AND TRADE-NAMES ☞35—TRANSFER—EFFECT.

In such case, as the business, with its good will, was transferred to complainant's predecessors, and complainant used the labels, defendant manufacturing cigars for complainant and attaching thereto such labels, complainant, who succeeded to the business of the original dealer using the labels, acquired the same right to use the labels.

7. COPYRIGHTS ☞29—PROTECTION.

Where labels applied to cigars did not bear the word "Copyright," or any abbreviation or letters suggestive of that idea, the labels are not entitled to protection on the theory that they had been copyrighted.

8. COPYRIGHTS ☞4—PROPERTY SUBJECT TO COPYRIGHT—PHOTOGRAPHS—"WRITING."

Cigar labels, containing the name and a cut of the face of a dealer, together with scroll work as disclosed in this case, are not "writings," subject to copyright within Const. art. 1, § 8, authorizing Congress to secure rights of authors in their "writings," and so are not entitled to protection under the copyright law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Writing.]

9. TRADE-MARKS AND TRADE-NAMES ☞93(3)—UNFAIR COMPETITION—RIGHT TO TRADE-MARKS.

The fact that complainant's officers approved of the bringing of suit by the defendant to restrain the unauthorized use by third persons of such labels does not constitute an admission by the complainant of a right on the part of the defendant, as against the consent of the complainant, to use such labels on cigars not manufactured for it; the complainant and

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendant, by reason of their trade relations, having a common interest in restraining the unauthorized use of such labels by third persons.

10. JUDGMENT ⊛‒‒707—CONCLUSIVENESS—"PRIVITY."

Thereafter the parties severed business relations, and the defendant manufacturer sued other manufacturers in a state court to restrain them from manufacturing and selling or disposing of cigars under the labels involved. Such manufacturers in their answer set out that they were manufacturing and labeling cigars for complainant, and for it exclusively, and were using the labels under complainant's direction as owner. A preliminary injunction was awarded, and, an appeal having been dismissed by the state Supreme Court, the parties entered into a stipulation that defendant should waive any claim for damages, and a permanent injunction should be awarded. It appeared that defendant's attorney received some compensation from complainant. *Held* that, as a judgment or decree binds parties and privies only, and as "privity" denotes mutual or successive relationship to the same rights of property, complainant, though naturally interested in the outcome of the decree in the action in the state court, not being an actual party, either originally or by way of intervention, and having no right to participate therein, was not bound by the decree in the state court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privity.]

11. TRADE-MARKS AND TRADE-NAMES ⊛‒‒85(1)—UNFAIR COMPETITION—RELIEF —FRAUD.

In such case, where the labels contained the statement "Havana Filler," and the evidence as to the presence or absence of Havana filler in the cigars manufactured for and sold by complainant was conflicting, complainant cannot be denied relief on the ground that it did not come into court with clean hands because of fraud in connection with the labels, for fraud must be particularly alleged and strictly proved.

12. TRADE-MARKS AND TRADE-NAMES ⊛‒‒85(2)—UNFAIR COMPETITION.

As the legislation relating to copyrights and the registration of trade-marks and labels is of such a character as to create much uncertainty and confusion, both within and outside the Patent Office, complainant, who was entitled to use a label, cannot be denied protection in that right on the ground of bad faith, because it first printed on its labels a statement that they had been copyrighted, and later the copyright notice was removed, and the legend "Reg. U. S. Pat. Off." substituted; it not appearing that complainant was in any way attempting to make a false claim as to the labels.

13. COURTS ⊛‒‒376—STATE PRACTICE CONTROLLING IN FEDERAL COURT—COMPETENCY OF WITNESSES—TRANSACTIONS WITH PERSONS SINCE DECEASED.

Under Rev. St. § 858, as amended (Comp. St. 1916, § 1464), declaring that the competency of a witness to testify in any civil action or proceeding in the courts of the United States shall be determined by the laws of the state or territory in which the court is held, a witness testifying in the federal court for Pennsylvania is incompetent to testify as to transactions had with, or statements made by, one dead at the time of the trial; that being the rule of the state practice.

In Equity. Bill by the M. B. Fahey Tobacco Company against Joseph Senior and H. N. Heusner, who claimed affirmative relief. Decree for complainant.

Trevor T. Matthews, of Philadelphia, Pa., for plaintiff.

John J. Bollinger, of York, Pa., and George H. Stein, of Philadelphia, Pa., for defendants.

⊛‒‒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRADFORD, District Judge. The M. B. Fahey Tobacco Company, hereinafter referred to as the Fahey company, a corporation of Delaware, has brought its bill against Joseph Senior and H. N. Heusner, charging them with trade-mark violation and unfair competition. It appears from the evidence that the complainant was incorporated August 23, 1910, with power, among other things, to manufacture, sell and deal in cigars and other forms of tobacco. It was organized September 2, 1910, and was duly registered September 10, 1910, in the proper office in Pennsylvania as a foreign corporation doing business in Chester. M. B. Fahey, whose name appears in the title of the complainant, for a number of years and until his death carried on business at No. 705 Edgemont Avenue, in Chester, Pennsylvania, as a wholesale and retail dealer in cigars and other forms of tobacco. He died February 18, 1910, leaving a will whereby he appointed his wife, Rebecca F. Fahey, and his brother Edward H. Fahey, his executrix and executor; and on or about August 11, 1910, they entered into a contract in writing with George B. Ditchfield and Oliver H. Perry for the sale to them of the stock, good will, and fixtures of the business theretofore carried on by the testator, and certain articles used in connection with that business. After Fahey's death and until the execution of the above contract the business theretofore conducted by the testator was continued by his personal representatives at the same place. Ditchfield and Perry on the organization of the complainant, which was created for the purpose of continuing the above mentioned business, transferred to it the right and interest acquired by them from Fahey's estate under the above mentioned contract of sale.

The defendant Heusner is a manufacturer of cigars in Hanover, Pennsylvania, and has there carried on such manufacture since May, 1895. Fahey from 1881 to 1886 or 1887 was a retail dealer in cigars and other forms of tobacco, and thereafter carried on a wholesale as well as retail business in the same. In the spring of 1899 Heusner was manufacturing or negotiating for the manufacture of a certain brand of cigars for Fahey, and certain labels were prepared for use on boxes containing that brand so to be furnished by Heusner. These labels contained a cut or printed reproduction of a photograph showing Fahey's head and shoulders with the words "Fahey's Special" above and the words "Havana Filler" below the cut. The right as between the complainant and the defendants to the use of these or substantially similar labels in connection with the sale of cigars is the principal bone of contention in this suit.

[1-3] From the spring of 1899 until the death of Fahey, nearly eleven years later, Heusner continued to use the above described or substantially similar labels on the boxes of cigars manufactured by him for Fahey, and, after the death of the latter, on boxes of cigars manufactured by him for those succeeding to Fahey's business. There is much and conflicting evidence as to the nature and extent of the right acquired by Heusner to the use of the labels. The complainant contends that it was and is entitled to their exclusive use, except so far as applied by Heusner to boxes of cigars manufactured for it, and

that, business dealings between the complainant, as successor to Fahey's business, and Heusner having been terminated, and he no longer manufacturing cigars for it, he has no right to use the labels on boxes of cigars manufactured for third persons, whether considered as trade-marks or merely trade-names or designations. On the other hand, the defendants urge that Heusner acquired a right to the use of the labels in connection with the sale of cigars to persons other than Fahey or his successors in business, should he or they not order of Heusner enough cigars to justify a restriction of the use of the labels to cigars manufactured for him or them. Everyone, in the absence of self-imposed restraint, has a right to use his own name in his own business in connection with the sale of articles manufactured and prepared or selected by him, by way of advertising the same, provided he does so without intent to perpetuate a fraud upon others or indulge in unfair competition. He is not to be debarred from the exercise of that right unless by his own consent and this only to the extent to which he has bound himself to abstain from its exercise. No one can by merely adopting and appropriating the personal name of another without the consent of the latter acquire as against him an exclusive right to the use of that name in connection with the sale of articles of the class to which it has been applied. And on stronger grounds no one can acquire an exclusive right as against a competitor in business by appropriating his name, different from his own, to be applied in the common business, without the consent of the business competitor; and the use of a fanciful design, peculiar style of lettering or ornamentation or other distinguishing marks on the label bearing the name is immaterial. So, while one may adopt and apply his own portrait as a trade-mark for goods manufactured or prepared or selected and sold by him, he is not to be permitted, if at all, to apply the portrait of a competitor in business to similar goods without the consent of the latter and, in case of consent, only to the extent assented to. To hold the contrary would lend judicial sanction to the grossest kind of unfair competition in trade prejudicial at once to the innocent competitor and to the purchasing public.

[4-6] The evidence bearing upon the relative rights of the respective parties to the use of the labels is in some respects so contradictory as to make it necessary to rely in large measure upon the inherent probabilities or improbabilities disclosed in the case. The uncontradicted proofs show that Fahey possessed in high degree personal popularity in Delaware county, where Chester is located; but they do not show that he enjoyed such popularity in York county where Hanover is located and Heusner carried on the manufacture of cigars, or in places other than Delaware county. It also appears that when the use of a label containing a cut of his head and face, and his name, was suggested to Fahey he was loath to adopt the suggestion; but did so only after viewing his popularity as an element in the successful advertising of the cigars to be sold by him. The fact that he was engaged in the business of selling cigars in boxes to which labels bearing his picture and name were by reason of his popularity to be affixed raises a strong presumption that, in permitting

Heusner to use such labels, he did not intend absolutely and for all time to deprive himself of the right to place them upon the cigars sold by him, though not manufactured by Heusner. Some stress is laid upon the fact that Heusner paid for the preparation and printing of the labels after negotiating with Fahey for their use as tending to show that he was acting principally, if not solely, for his own benefit. Under the circumstances, however, such payment is entitled to but little, if any, weight on the question of exclusive right to the use of the labels. Heusner was interested in manufacturing for and selling to Fahey such cigars as the latter should desire to sell and was further interested that the quantity of cigars so to be furnished to Fahey should be increased through the use by the latter in his wholesale and retail business of labels bearing his picture and name. So Fahey, with a view to success in his business, was interested that sales should be increased from the affixing of the labels to the boxes containing the cigars manufactured for him by Heusner, and to be sold by the former especially in Delaware county. It was reasonable that Heusner, so long as he continued to manufacture for Fahey or his successors the brand of cigars desired by him or them, should have a right to use on the boxes the above mentioned labels; but it would be extremely unreasonable, in the absence of a clear contract in that behalf, that after Heusner should cease to furnish cigars to Fahey or his successors the former should have as against the latter any exclusive right to such labels, or a right to use them in competition with the latter. So, while it would be but natural that Fahey should permit the use by Heusner of the labels so long as they should be applied to cigars of the required brand furnished by the latter to the former; it would be the height of unreason to impute to Fahey any intention that after Heusner should cease to manufacture cigars for him, he, Fahey, should be precluded from using in his own legitimate business labels bearing his picture and name, or be subjected to competition in their use by Heusner. And these remarks have application to Fahey's successors in business equally with Fahey.

There has been considerable testimony on the question who designed or selected the labels. This is unimportant; for even if the labels be viewed as trade-marks in contradistinction to mere trade-names or advertisements, the material inquiry is, not who invented the labels, but by whom and by whose authority they were first applied to boxes of cigars. It is the use, and not the invention, of a trade-mark that creates the exclusive right. A trade-mark actually applied for the first time by a manufacturer to articles made and sold by him to a dealer is not necessarily the property of the former; for if it be applied at the request and by the authority of the latter, to be used in connection with his sales, the former may or may not according to the circumstances of the particular case be treated as the agent of the dealer who through such application of the trade-mark acquires the exclusive right. If, however, the labels be viewed, not as trade-marks, but mere trade-names or advertisements, the question of unfair competition in trade through their use must be determined, not with reference to any exclusive right in or to the mark—for none exists—

but upon the particular facts disclosed. It is, I think, clearly to be gathered from the evidence that the arrangement between Fahey and Heusner for the use of the above mentioned labels contemplated the continuance of the relation between them of vendor and purchaser of cigars of the required brand, and that Heusner's right to use such labels was conditioned upon the continued existence of such relationship between them or their successors. Fahey and Heusner had a common and mutual pecuniary interest in the use of the labels on the cigars manufactured by the latter for the former, and neither of them had as against the other any exclusive right to the use of the labels. Their use was equally advantageous to both of them. After the death of Fahey, Heusner continued to supply those succeeding to and carrying on his wholesale and retail business in Chester, including the complainant, with cigars of the required brand in boxes bearing the above mentioned labels. And this continued from the organization of the complainant until February, 1914, and during that period practically all cigars bearing those labels were furnished by Heusner to the complainant. By virtue of the sale and transfer of the good will and business by Fahey's personal representatives to Ditchfield and Perry, and subsequently by the latter to the complainant, and of Heusner continuing to manufacture cigars for Fahey's successors in business, the complainant undoubtedly acquired the right to use the labels in question. Some friction having occurred between them, Heusner in February, 1914, ceased to furnish the complainant with cigars of the required brand, and began supplying them under the above mentioned labels, and a slip label adopted in 1913, and containing the words "Fahey's Special," to the defendant Senior, a tobacco salesman, who continues to sell the same so labeled to persons other than the complainant. This conduct of the defendants, after the only legitimate reason for the use of the labels by Heusner or anybody under him ceased to exist, involves, unless there be some clear justification or excuse, such unfair competition on their part as should be enjoined by this court. The right of the complainant to relief does not depend upon trade-mark ownership. The labels in question have been used and enjoyed by the complainant in the conduct of its legitimate business. The defendants cannot be permitted to use them, bearing Fahey's name and cut, on cigars not manufactured for the complainant by Heusner for the reason that such use would deceive, or be directly calculated to deceive, the purchasing public into the belief that cigars so labeled similar to those sold under the same labels by the complainant were made or selected and sold by the latter.

[7, 8] The complainant claims that the labels were registered in the patent office, and in fact each of them bears the letters and abbreviations "Reg. U. S. Pat. Off." Its right to relief in this suit, however, cannot be supported by any proceedings in that office. There was and could be no compliance with the provisions of law touching the registration of trade-marks. Nor do the laws of the United States secure to the complainant the benefit of copyright in the labels. Aside from other reasons, in the first place the labels which are and have been applied do not bear the word "copyright," or any abbreviation or

letters suggestive of that idea. And, secondly, a mere copy of a photograph does not come within the domain of legislation under the constitutional power of Congress "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Const. art. 1, § 8. The word "writings" as here used has been liberally construed by the courts, but not broadly enough to include a mere mechanical reproduction of the likeness disclosed in a photograph. In the Trade-Mark Cases, 100 U. S. 82, 94 (25 L. Ed. 550), the court said:

"The ordinary trade-mark has no necessary relation to invention or discovery. * * * It is often the result of accident rather than design, and when under the act of Congress it is sought to establish it by registration, neither originality, invention, discovery, science, nor art is in any way essential to the right conferred by that act. If we should endeavor to classify it under the head of writings of authors, the objections are equally strong. In this, as in regard to inventions, originality is required. And while the word *writings* may be liberally construed, as it has been, to include original designs for engravings, prints, &c., it is only such as are *original*, and are founded in the creative powers of the mind. The writings which are to be protected are *the fruits of intellectual labor*, embodied in the form of books, prints, engravings, and the like."

And in Higgins v. Keuffel, 140 U. S. 428, 431, 11 Sup. Ct. 731, 732 (35 L. Ed. 470), the court said with reference to the constitutional grant of power:

"This provision evidently has reference only to such writings and discoveries as are the result of intellectual labor. * * * It does not have any reference to labels which simply designate or describe the articles to which they are attached, and which have no value separated from the articles; and no possible influence upon science or the useful arts. * * * To be entitled to a copyright the article must have by itself some value as a composition, at least to the extent of serving some purpose other than as a mere advertisement or designation of the subject to which it is attached."

The scroll work on the labels is palpably insufficient to justify their registration under any act of Congress. In Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349, the court recognized a vital distinction so far as securing copyright was concerned between a photograph as a mere mechanical reproduction, and a photograph as an original work of art involving originality of thought and conception in its production; the photograph in the former case not being the subject of copyright. In the case in hand the question is not how far a photograph may be the subject of copyright, but whether a mere mechanical copy of a photograph comes within the copyright law. This question must be answered in the negative.

[9] Much stress is laid by the defendants upon the fact that Heusner in August, 1911, with the knowledge and approval of the officers of the complainant brought suit in the court of common pleas of Delaware county against William F. Fahey and Edward H. Fahey, trading as Fahey Brothers, to restrain them from selling and disposing of cigars under the labels in question. I do not attach much importance to this circumstance, for the reason that at the time the suit was brought business dealings continued between Heusner and

the complainant, and they had a common interest that the labels should not be used by others in unfair competition with them or either of them; and whether the defendants in that suit should be restrained from such wrongful use at the instance of Heusner, on the one hand, or of the Fahey company, on the other, was a matter of indifference. In either case a favorable result would enure to the benefit of both Heusner and the complainant here.

[10] It appears from the evidence that a suit was brought by Heusner in April, 1914, in the court of common pleas of York county against Baugher & Kohler to restrain them from manufacturing and selling or disposing of cigars under the labels in question. The defendants set forth in their answer, among other things, that they were manufacturing and labeling cigars for the Fahey company and for it exclusively, and were using the labels in question under its direction as owner thereof. A preliminary injunction was awarded in accordance with the prayer of the bill, and an appeal was taken to and dismissed by the supreme court of Pennsylvania. Subsequently an agreement was entered into between counsel for the respective parties which, after providing for the use at final hearing of testimony theretofore taken in the suit, stipulated, among other things, that the final hearing should be dispensed with; that a decree should be entered enjoining the defendants as prayed in the bill; and that Huesner "hereby waives any claim which he may have for damages against the defendants by reason of the facts stated in his bill of complaint filed in said action and the entry of a final decree by the court as herein agreed upon." A permanent injunction was awarded in accordance with the above agreement, and this was the end of the case. It appears that J. S. Black, Esq., who appeared and acted as attorney for the defendants received some compensation for or on account of his services from the Fahey company through its president, and it is now insisted that the complainant is precluded from denying in this suit that Huesner or Senior acting by his authority has a right to use the labels in question. I do not think the decision in the case against Baugher & Kohler has the effect claimed for it. A judgment or decree binds parties and privies, but, while the complainant here had an interest in the subject matter of that suit, to be indirectly affected to a certain extent by its decision, and in view of that fact paid some compensation to the counsel for the defendants, the complainant was not technically or substantially a party to that suit either originally or by way of intervention. It had no power to examine or cross-examine witnesses in nor to control the suit. The decision, therefore, could not bind the complainant here, unless it was in privity with Baugher & Kohler. Stryker v. Goodnow, 123 U. S. 527, 8 Sup. Ct. 203, 31 L. Ed. 194; Litchfield v. Goodnow, 123 U. S. 549, 8 Sup. Ct. 210, 31 L. Ed. 199. In Stryker v. Goodnow the court said:

"We have not overlooked the fact that a brief was filed at the hearing in this court on behalf of the railroad company to support the claim of Wolcott that the title of that company was the best. Such a proceeding did not make the railroad company a party to the suit, or bind it by the decree. Being interested in the question to be decided, the company was anxious to secure a judgment that could not be used as a precedent against its own

claims in any litigation that might thereafter arise in respect to its own property. It is not an uncommon thing in this court to allow briefs to be presented by or on behalf of persons who are not parties to the suit, but who are interested in the questions to be decided, and it has never been supposed that a judgment in such a case would estop the intervenor in a suit of his own which presented the same questions."

The Fahey company was not in privity with Baugher & Kohler within the meaning of the rule that a judgment or decree binds parties and privies. Privity "denotes mutual or successive relationship to the same rights of property" (Litchfield v. Goodnow, supra), and the rule is inapplicable where the person against whom an estoppel is urged acquired his interest in the subject matter of the suit before its institution. Dull v. Blackman, 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733. The doctrine of estoppel by record must, therefore, be held to have no application as against the complainant.

[11, 12] The defendants contend that relief should be denied the complainant because, as asserted, it has not come into court with clean hands. This charge is based on two grounds. The first is, that the labels contain a false and deceptive statement in the use of the words "Havana Filler." Fraud must be particularly alleged and strictly proved, and in view of the conflict of evidence as to the presence of Havana filler in the cigars manufactured for and sold by the complainant I am unable to find fraud or bad faith in the use of those words. The second ground on which bad faith is charged against the complainant is that, while the Fahey labels for which registration purports to have been first granted by the patent office, have printed on them the words "Copyright, M. B. Fahey Tobacco Co. 1914," this copyright notice was shortly thereafter removed from the labels and "Reg. U. S. Pat. Off." substituted. Counsel for the defendants in their brief stated that the complainant "was not satisfied with the copyright notice which appeared on the label and forthwith took it off and put on in its place the words 'Reg. U. S. Pat. Off.' which is the notice of registration to be affixed to a registered trade-mark," etc., and further, that the label "was not registered as a trade-mark and there is some difficulty in determining from the copyright act and the trade-mark act the procedure followed by the patent office in registering labels which are to be affixed to articles of manufacture." The legislation relating to copyright and the registration of trade-marks and labels is of such character as to create much uncertainty and confusion both within and outside the patent office with respect to its administration. And the truth of this remark has been exemplified in connection with the treatment by the patent office of the labels in question. Under the circumstances I am unable to perceive any ground on which a charge of bad faith may be sustained against the complainant on account of the change from a copyright notice to a mere statement of registration in the patent office. For reasons already given neither of them was of any avail. The making of a false statement by one using a process or making and selling apparatus that the same has been patented with intent to deter others, having an equal right, from using such process, or making and selling such apparatus, is a fraud upon the public. But nothing of that kind, nor anything savoring of a fraudulent purpose in

connection with the use by the complainant of the labels in question or with any action on its part in the patent office relating to them appears in the case.

[13] Under the laws of the United States "the competency of a witness to testify in any civil action, suit, or proceeding in the courts of the United States shall be determined by the laws of the state or territory in which the court is held." (Rev. St. § 858, as amended [Comp. St. 1916, § 1464].) Heusner was a witness in this case and testified as to transactions and statements with and by Fahey and to other matters connected with him as to which he was under the laws of Pennsylvania an incompetent witness. While I have examined all of his testimony and have disregarded such portions of it as, under the decisions in Pennsylvania he was incompetent to give, I have no hesitation in saying that, had he been competent to give all of his testimony, the conclusion reached by the court would not have been affected, in view of the direct and circumstantial evidence and the probabilities of the case supporting the contention of the complainant.

For reasons already expressed in this opinion the complainant is entitled to the enjoyment of the labels as against these defendants; and consequently to an injunction and an accounting. For the same reasons the relief prayed by the defendants in their answer must be denied.

A decree in accordance with this opinion may be prepared and submitted.