# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## MECOSTA COUNTY MEDICAL CENTER v METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY

Docket Nos. 161628 and 161650. Argued on application for leave to appeal November 10, 2021. Decided June 10, 2022.

Mecosta County Medical Center, doing business as Spectrum Health Big Rapids, and others sued Metropolitan Group Property and Casualty Insurance Company and State Farm Mutual Automobile Insurance Company in the Kent Circuit Court, seeking personal protection insurance (PIP) benefits related to a single-car crash involving Jacob Myers. Myers co-owned the vehicle involved in the crash with his girlfriend; his girlfriend's grandmother had purchased a no-fault insurance policy on the vehicle through Metropolitan Group. Myers was injured in the crash and was treated for his injuries by plaintiffs. Myers assigned plaintiffs his right to collect PIP benefits in the amount of his treatment bills. After the assignment, Myers sued Metropolitan Group and State Farm in the Wayne Circuit Court for PIP benefits related to other costs arising from the crash. Plaintiffs sued defendants in the Kent Circuit Court to recover on the assigned claim. Defendants moved for summary disposition against Myers in the Wayne Circuit Court. State Farm argued that because Myers did not live with the State Farm policyholders he was not covered by their policy. Metropolitan Group asserted that Myers was not entitled to coverage because he did not personally maintain coverage on the vehicle, contrary to MCL 500.3113(b). The Wayne Circuit Court granted both motions and dismissed Myers's PIP claim with prejudice. Myers did not appeal. While the defendants' motions were pending in the Wayne Circuit Court, Metropolitan Group also moved for summary disposition in the Kent Circuit Court on the same basis as its motion in the Wayne Circuit Court. However, the Wayne Circuit Court granted defendants' motions before the Kent Circuit Court considered Metropolitan Group's motion. After the Wayne Circuit Court granted summary disposition for defendants, defendants filed additional motions for summary disposition under MCR 2.116(C)(7) and (C)(10) in the Kent Circuit Court, arguing that plaintiffs' claims were barred under the doctrines of res judicata and collateral estoppel because the Wayne Circuit Court had concluded that Myers was ineligible for PIP benefits. The Kent Circuit Court, Dennis B. Leiber, J., granted summary disposition, holding that plaintiffs' claims were barred by res judicata and collateral estoppel. Plaintiffs appealed in the Court of Appeals, and the Court of Appeals, METER and K. F. KELLY, JJ., (MURRAY, C.J., dissenting), reversed in a split, unpublished opinion, issued March 24, 2020. The Court of Appeals majority held that an assignee was not bound by a judgment against an assignor in an action commenced after the assignment occurred. Defendants applied for leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral

argument on whether to grant defendants' applications for leave to appeal or take other action. 507 Mich 865 (2021).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

Res judicata bars a second action on the same claim if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. Similarly, collateral estoppel bars the relitigation of a specific issue within an action when (1) a question of fact essential to the judgment was litigated and determined by a valid and final judgment, (2) the parties or privies had a full and fair opportunity to litigate the issue, and (3) there is mutuality of estoppel. Thus, both res judicata and collateral estoppel apply only when the parties in the subsequent action were parties or privies of parties to the original action. Given that plaintiffs were not parties to the action filed by Myers, the question in this case was whether plaintiffs were privies of Myers with respect to the judgment entered by the Wayne Circuit Court after the assignment. A party is in privity with another party when the later litigant represents the same legal rights as the first litigant asserted, i.e., when the first and later litigants have mutual or successive relationships to the same interest and right of property or when there is such an identification of interests as to represent the same legal right. Generally, a relationship based on an assignment of rights is deemed to be one of privity. An assignment occurs when the assignor transfers his or her rights or interest to the assignee, and the assignee succeeds to the rights of the assignor. But the mere succession of rights to the same property or interest does not, by itself, give rise to privity with regard to subsequent actions by and against the assignor. Rather, the binding effect of adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner. That is, the assignee succeeds to the rights assigned by the assignor subject to any earlier adjudication involving the assignor that defined those rights. Therefore, a judgment entered after the assignment does not bind the assignee because the assignee was not in privity with the assignor with respect to that judgment. The dissenting opinion in the Court of Appeals relied on *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39 (2010). However, the medical provider's claim in *TBCI* was not obtained by assignment, but rather was based on caselaw, which was subsequently overturned, holding that medical providers had an independent claim in no-fault cases that was completely derivative of and dependent on the insured's having a valid claim of no-fault benefits against the insurer. *TBCI* did not address assignments and was not applicable here or to the traditional rule being applied in the instant case. In this case, plaintiffs were not in privity with Myers with respect to the judgment entered subsequently to the assignment, and therefore, plaintiffs could not be bound by that judgment under the doctrines of res judicata and collateral estoppel.

Judgment affirmed and case remanded for further proceedings.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 10, 2022

# STATE OF MICHIGAN

## SUPREME COURT

MECOSTA COUNTY MEDICAL
CENTER, doing business as SPECTRUM
HEALTH BIG RAPIDS, SPECTRUM
HEALTH HOSPITALS, SPECTRUM
HEALTH PRIMARY CARE PARTNERS,
doing business as SPECTRUM HEALTH
MEDICAL GROUP, MARY FREE BED
REHABILITATION HOSPITAL, and
MARY FREE BED MEDICAL GROUP,

       Plaintiffs-Appellees,

v                                                                No. 161628

METROPOLITAN GROUP PROPERTY
AND CASUALTY INSURANCE
COMPANY,

       Defendant-Appellant,
and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee.

MECOSTA COUNTY MEDICAL
CENTER, doing business as SPECTRUM
HEALTH BIG RAPIDS, SPECTRUM
HEALTH HOSPITALS, SPECTRUM
HEALTH PRIMARY CARE PARTNERS,
doing business as SPECTRUM HEALTH
MEDICAL GROUP, MARY FREE BED
REHABILITATION HOSPITAL, and
MARY FREE BED MEDICAL GROUP,

        Plaintiffs-Appellees,

v                                    No. 161650

METROPOLITAN GROUP PROPERTY
AND CASUALTY INSURANCE
COMPANY,

        Defendant-Appellee,
 and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

Jacob Myers was injured in a car crash and received medical treatment from plaintiffs Mecosta County Medical Center and Mary Free Bed Rehabilitation Hospital. As compensation for this treatment, Myers assigned them his right to seek no-fault personal protection insurance (PIP) benefits from the insurer responsible for making those payments. After the assignment, Myers filed suit seeking PIP benefits for separate services he received arising from the crash. In that lawsuit, to which plaintiffs here were not party,

2

the trial court held that Myers had not properly insured the vehicle and was therefore not entitled to any benefits. The question in the present case is whether that holding applies to plaintiffs and precludes them, under the doctrines of res judicata or collateral estoppel, from succeeding on the present assigned claim against the defendant insurers. Because plaintiffs were not parties to the earlier suit, they are bound by the judgment only if they were in privity with Myers when the earlier judgment against him was entered. The Court of Appeals properly determined that plaintiffs were not bound by the earlier judgment because it was entered *after* they were assigned the claim. Accordingly, because plaintiffs were neither parties to the earlier suit nor privies with respect to the subsequently entered judgment, the doctrines of res judicata and collateral estoppel are inapplicable here.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Mecosta County Medical Center and Mary Free Bed treated Myers for injuries he sustained in a single-car crash. Instead of paying the medical bills and seeking reimbursement from the vehicle's insurer, Myers assigned plaintiffs his right to collect PIP benefits in the amount of his treatment bills. Myers owned the vehicle with his girlfriend, whose grandmother had purchased the no-fault insurance policy on the vehicle through defendant Metropolitan Group Property and Casualty Insurance Company.

Myers then sued Metropolitan Group and defendant State Farm Mutual Automobile Insurance Company—who was also allegedly liable to provide coverage—for PIP benefits relating to other costs arising from the crash. As that suit was pending in the Wayne Circuit Court, plaintiffs here sued the same defendants in the Kent Circuit Court to recover on the

3

assigned claim. Metropolitan moved to change venue to the Wayne Circuit Court, but plaintiffs opposed the motion, and the trial court ultimately denied it.

In Myers's action, defendants moved for summary disposition under MCR 2.116(C)(10). State Farm argued that Myers did not live with the State Farm policyholders and, therefore, was not covered. Metropolitan claimed Myers was not entitled to coverage because he personally did not maintain insurance coverage on the vehicle—rather, his girlfriend's grandmother did—and thus he violated MCL 500.3113(b), which required him, as the co-owner of the vehicle, to maintain insurance coverage. The Wayne Circuit Court granted both motions, dismissing Myers's PIP claim with prejudice. Myers did not appeal.[1]

While the motions were pending in Myers's suit, defendant Metropolitan filed an identical motion in the instant suit in the Kent Circuit Court. However, the Wayne Circuit Court granted summary disposition before the Kent Circuit Court could consider the motion. After that judgment entered, both defendants in the present case filed an additional motion for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that plaintiffs' claims were barred by res judicata and collateral estoppel due to the decision of the Wayne Circuit Court holding that Myers was ineligible for PIP benefits. The Kent Circuit Court granted summary disposition, holding that plaintiffs' claims were barred by res judicata and collateral estoppel.

---

[1] After the trial court's decision in that case, we held in *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 172-173; 934 NW2d 674 (2019), "that an owner or registrant of a motor vehicle is not required to personally purchase no-fault insurance for his or her vehicle in order to avoid the statutory bar to PIP benefits." We do not here decide whether and how *Dye* would apply in the present case.

4

Plaintiffs appealed in the Court of Appeals, which reversed in a split, unpublished decision. The majority held that an assignee is not bound by a judgment against an assignor in an action commenced after the assignment occurred. *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2020 (Docket No. 345868), p 5. To hold otherwise, it reasoned, would be to allow an assignor to cut off an assignee's rights without the latter having any notice or opportunity to be heard. *Id*. Judge MURRAY dissented, expressing his belief that Court of Appeals caselaw mandated the conclusion that plaintiffs were privies of Myers and therefore bound by the judgment against him. See generally *id*. (MURRAY, C.J., dissenting).

Defendants sought leave to appeal the majority's decision in this Court. We ordered argument on the application, requesting briefing on whether plaintiffs' "claims for no-fault personal protection insurance benefits are barred by (1) res judicata or (2) collateral estoppel." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 507 Mich 865 (2021).

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). Likewise, "[w]e review de novo the interpretation of a common-law doctrine." *Bertin v Mann*, 502 Mich 603, 608; 918 NW2d 707 (2018).

## III. ANALYSIS

The issue in this case is whether plaintiffs' action is precluded by the judgment against Myers under the doctrines of res judicata or collateral estoppel. Res judicata bars

5

a second action on the same claim if " '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.' " *Foster v Foster*, 509 Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161892); slip op at 8, quoting *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). Whereas res judicata involves preclusion of entire claims, collateral estoppel focuses on specific issues within an action. See generally *Migra v Warren City Sch Dist Bd of Ed*, 465 US 75, 77 n 1; 104 S Ct 892; 79 L Ed 2d 56 (1984). The elements of collateral estoppel are similar: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment," (2) the parties or privies " 'must have had a full [and fair] opportunity to litigate the issue,' " and (3) " 'there must be mutuality of estoppel.' " *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (alteration in original), quoting *Storey v Meijer, Inc*, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988).[2] "[O]ne of the critical factors in applying . . . collateral estoppel involves the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered." *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 42; 191 NW2d 313 (1971).

Thus, both res judicata and collateral estoppel apply only when the parties in the subsequent action were parties or privies of parties to the original action. Plaintiffs in the present case were not parties to Myers's action. Consequently, this case turns upon

---

[2] The mutuality requirement has been dispensed with in certain scenarios. See *id*. at 687-688. No mutuality concerns have been raised in the present case and we have no occasion to opine on this requirement.

whether they were privies of Myers with respect to the judgment that was entered against him after the assignment.

"To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 470 Mich at 122. "In its broadest sense, privity has been defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.' " *Sloan v Madison Hts*, 425 Mich 288, 295; 389 NW2d 418 (1986) (citation omitted).[3]

Generally, a relationship based on an assignment of rights is deemed to be one of privity. See *Taylor v Sturgell*, 553 US 880, 894; 128 S Ct 2161; 171 L Ed 2d 155 (2008) (discussing nonparty preclusion under res judicata and collateral estoppel). An assignment of rights occurs when the assignor transfers his or her rights or interests to the assignee. See *State Treasurer v Abbott*, 468 Mich 143, 150 n 8; 660 NW2d 714 (2003) (" 'This court has defined the word "assignment" in the language of Webster as meaning "to transfer or make over to another;" and in the language of Burrill's Law Dictionary as "to make over or set over to another; to transfer." ' ") (emphasis and citation omitted), quoting *Allardyce v Dart*, 291 Mich 642, 644-645; 289 NW 281 (1939). In these circumstances, the assignee succeeds to the rights of the assignor, thus meeting the general definition of privity. See Casad & Clermont, *Res Judicata: A Handbook on its Theory, Doctrine, and Practice* (Durham: Carolina Academic Press, 2001), p 151.

---

[3] See also Casad & Clermont, *Res Judicata: A Handbook on its Theory, Doctrine, and Practice* (Durham: Carolina Academic Press, 2001), p 151 (noting the "classic definition of privity as a 'mutual or successive relationship to the same rights of property' "), quoting 2 Black, *A Treatise on the Law of Judgments* (2d ed, 1902), p 830.

7

But the mere succession of rights to the same property or interest does not, by itself, give rise to privity with regard to subsequent actions by and against the assignor. Cf. *Sodak Distrib Co v Wayne*, 77 SD 496, 502; 93 NW2d 791 (1958) ("Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts."). Rather, "[t]he binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner." *Id*. at 502-503. In other words, the assignee succeeds to those rights subject to any earlier adjudication involving the assignor that defined those rights. When the litigation involving the assignor occurs after the assignment, the rights could not yet have been affected by the litigation at the time they were transferred to the assignee.

It is therefore well established that a judgment entered after the assignment does not bind the assignee because the assignee is not in privity with the assignor with respect to that judgment. As early as 1898, the United States Supreme Court was able to express this rule as black-letter law:

> We remark again that while a judgment or decree binds not merely the party or parties subject to the jurisdiction of the court but also those in privity with them, yet that rule does not avail the plaintiffs in error, for [the defendant's assignee] acquired his rights prior to the institution of the suit in New York and was therefore not privy to that judgment.
>
> > "It is well understood, though not usually stated in express terms in works upon the subject, that no one is privy to a judgment whose succession to the rights of property thereby affected, occurred previously to the institution of the suit. A tenant in possession prior to the commencement of an action of ejectment cannot therefore be lawfully dispossessed by the judgment unless made a party to the suit. . . . No grantee can be bound by any judgment in an action commenced against his

8

> grantor subsequent to the grant, otherwise a man having no interest in property could defeat the estate of the true owner. The foreclosure of a mortgage, or of any other lien, is wholly inoperative upon the rights of any person not a party to the suit, whether such person is a grantee, judgment creditor, attachment creditor, or other lienholder." Freeman on Judgments (1st ed.), § 162.

> [*Dull v Blackman*, 169 US 243, 248; 18 S Ct 333; 42 L Ed 733 (1898).]

See also Freeman, A Treatise on the Law of Judgments (1886), § 162, p 177 ("The assignee of a note is not affected by any litigation in reference to it, beginning after the assignment."). Courts have continued to abide by this rule,[4] and it remains a bedrock in the literature on the subject.[5]

---

[4] See, e.g., *Northern Oil & Gas, Inc v EOG Resources, Inc*, 970 F3d 889, 891 (CA 8, 2020) ("Under principles of res judicata, litigants in privity are bound by a *prior* judgment controlling an issue in subsequent litigation. In North Dakota, 'the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication.' ") (emphasis added), quoting *Gerrity Bakken, LLC v Oasis Petroleum North America, LLC*, 915 NW2d 677, 684 (ND, 2018); *Indus Credit Co v Berg*, 388 F2d 835, 841 (CA 8, 1968) ("Ordinarily, a person in privity with a party to a lawsuit, . . . under principles of res judicata or collateral estoppel, must acquire his interest in the transaction after commencement of the action or rendition of the judgment."); *Wight v Chandler*, 264 F2d 249, 253 (CA 10, 1959) ("Having acquired the interest now in controversy prior to the institution of the action and having owned it ever since, he was not in privity with the defendant [assignor] respecting it at the time of the institution of the action or at any time later."); *Laster v American Nat'l Fire Ins Co*, 775 F Supp 985, 989 (ND Tex, 1991) ("There is no preclusion if the assignment takes place before the litigation that is urged as a basis for preclusion."); *Gramatan Home Investors Corp v Lopez*, 46 NY2d 481, 486-487; 386 NE2d 1328 (1979) ("In the assignor-assignee relationship, privity must have arisen after the event out of which the estoppel arises. Hence, an assignee is deemed to be in privity with the assignor where the action against the assignor is commenced before there has been an assignment. . . . Conversely, an assignee is not privy to a judgment where the succession to the rights affected thereby has taken place prior to the institution of the suit against the assignor.").

[5] See Restatement Judgments, 2d, § 55, p 68 ("The determination of issues in an action by or against either assignee or assignor is not preclusive against the other of them in a

This rule is reflected in this Court's caselaw. In its decision below, the Court of Appeals appropriately relied upon *Aultman, Miller & Co v Sloan*, 115 Mich 151, 154; 73 NW 123 (1897). In that case, after the mortgagee assigned his interest in the property, he sued the mortgagors, who argued that an assignment had occurred. *Id*. at 152-153. The mortgagee obtained a judgment, and the question in the second suit, brought by the assignee, was whether that judgment precluded the assignee's action. *Id*. at 153. In finding that there was no privity, we observed that the assignee and assignor disputed whether an assignment had occurred. *Id*. at 154. Nonetheless, we did not rely upon this disagreement alone and instead pronounced that allowing the assignor's subsequent case to preclude the assignee's case would "cut off the rights of [the assignee], without giving him an opportunity to be heard." *Id*. Therefore, the judgment obtained after the assignment should not be given preclusive effect. *Id*. *Aultman* has long been cited for the rule that judgments rendered after an assignment do not bind the assignee. See, e.g., 24 Garland & McGehee,

subsequent action, except" when the action was "brought by the assignor before the assignment" and the assignee then brings an action or when "there is a further relationship between the assignee and assignor from which preclusion may arise"); 50 CJS, Judgments, § 1106, p 530 ("The assignee of a right of property or chose in action is concluded by a judgment for or against the assignor in a suit begun before the assignment, but not where the assignee's rights vested prior to the commencement of the action, except as the rule may have been altered by statute, or where the assignee has been notified to defend the action and failed to do so."); 46 Am Jur 2d, Judgments, § 570, p 937 ("A judgment against an assignor binds the assignee, where the assignee acquiesced to the assignor's *prior* litigation, there was a substantial legal relationship between the assignee and the assignor, the assignee's interests were aligned with the assignor in the prior litigation, *and* the assignee had control over the prior litigation and could have terminated it at any time.") (emphasis added); cf. *Res Judicata*, p 154 (stating that the transferee of property is not in privity with the transferor if the interest was acquired "before the commencement of the action involving the transferor").

eds, The American & English Encyclopedia of Law (1903), p 749 (citing *Aultman*, among other cases, for the rule that an assignee is not bound by the results of postassignment lawsuits to which it was not a party).

We expressed the same general rule even more directly in *Howell*, 386 Mich 37. We stated that " '[a] privy is one who, *after rendition of the judgment*, has acquired an interest in the subject matter affected by the judgment through or under one of the parties . . . .' " *Id*. at 43, quoting *Bernhard v Bank of America Nat'l Trust & Savings Ass'n*, 19 Cal 2d 807, 811; 122 P2d 892 (1942).  This rule has been cited and relied upon by numerous courts.[6]  We have also indicated elsewhere, in an analogous context, that the postassignment actions of an assignor cannot provide a basis to bind the assignee.  See *Saginaw Fin Corp v Detroit Lubricator Co*, 256 Mich 441, 443; 240 NW 44 (1932) ("After assignment, the assignor loses all control over the chose [in action] and cannot bind the assignee, by estoppel or otherwise.").

In advocating for a different result, the Court of Appeals dissent here relied on *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39; 795 NW2d 229 (2010).  That case also formed the basis for the holding in *The Medical Team, Inc v Auto-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2020 (Docket No. 345449), which reached a conclusion in direct conflict with the one we reach in the present case.  The medical provider's claim in *TBCI* was not obtained by assignment,

---

[6] See, e.g., *Metzler v United States*, 832 F Supp 204, 208 (ED Mich, 1993) (citing and applying this rule from *Howell*); *Rohe Scientific Corp v Nat'l Bank of Detroit*, 133 Mich App 462, 467; 350 NW2d 280 (1984) (citing *Howell* and holding that because a party's interest in the property was obtained "long before judgment" in the first action, there was no privity).

11

however.  Rather, the basis for the medical provider's claim was Court of Appeals caselaw (that was subsequently overturned) holding that medical providers had an independent claim that was nonetheless "completely derivative of and dependent on [the insured's] having a valid claim of no-fault benefits against" the insurer.  *Moody v Home Owners Ins Co*, 304 Mich App 415, 440; 849 NW2d 31 (2014); see also *Mich Head & Spine Institute, PC v State Farm Mut Auto Ins Co*, 299 Mich App 442, 448 n 1; 830 NW2d 781 (2013), citing *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*, 250 Mich App 35, 39; 645 NW2d 59 (2002).[7]

Neither the dissent below, *The Medical Team*, nor *TBCI* itself explain why *TBCI*'s reasoning should prevail over the traditional approach discussed above.  Indeed, none of these opinions mentions the traditional rule or our caselaw reflecting that rule.  *TBCI* did not address assignments, which have long been governed by the rule discussed above.  It therefore is not applicable here.[8]

---

[7] That caselaw was overturned in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017).  After *Covenant*, the Legislature expressly provided a direct cause of action for medical providers.  MCL 500.3112.  Those statutory causes of action are not before the Court, and we therefore do not decide whether a medical provider bringing such an action would be in privity with an insured for purposes of res judicata or collateral estoppel.

[8] *The Medical Team* also relied upon *Jones v Chambers*, 353 Mich 674; 91 NW2d 889 (1958).  In that case, the owner of an oil truck involved in a collision assigned part of the claim to its insurer.  The owner and insurer of the truck sued the owner of the other vehicle involved in the collision.  *Id*. at 675-676.  About two weeks later, the owner of the other vehicle and his insurer sued the truck owner (and an unrelated party) in a different court.  That second case was decided first, and the owner of the other vehicle prevailed as plaintiff. *Id*. at 676.  The trial court in the first suit then held that the truck owner and its insurer were barred from suit.  We agreed, quoting the trial court's opinion that even though the assignee-insurer was not a party to the second-filed suit, the insurer obtained only the rights of the truck owner and no more.  *Id*. at 681-682.

In light of this analysis, we conclude that the plaintiff assignees here were not in privity with their assignor, Myers, with respect to the subsequently entered judgment. Therefore, the plaintiff assignees cannot be bound by that judgment under the doctrines of res judicata or collateral estoppel.

## IV. CONCLUSION

In this case, we hold that plaintiff assignees were not in privity with Myers with respect to the judgment that was rendered against him after he had assigned the present PIP claim to plaintiffs. We therefore affirm the judgment of the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

David F. Viviano
Bridget M. McCormack
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

---

The Court in *Jones* did not, however, address privity at all. In fact, our recitation of the law of res judicata was incomplete, as it did not discuss the need for the two lawsuits to contain the same parties or their privies. Moreover, under the unique facts in *Jones*, the parties arguably were in privity. They had, together, initiated the first suit. And they proceeded with that suit as the second one was filed and pending. Under these facts, it is arguable that they continued to have "a further relationship" such that the general rule against preclusion would not apply. See Restatement Judgments, 2d, § 55, p 68 (noting that the rule against application of res judicata is inapplicable where the assignee and assignor have "a further relationship"). These facts might also fall within the "outer limit of the doctrine" of privity as we defined it in *Adair*, 470 Mich at 122: "[T]he doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." (Citation omitted.) Being coplaintiffs might qualify as a "working functional relationship." In any event, as noted, *Jones* simply did not address privity at all, much less the rule we are examining in this case. Therefore, it is inapplicable to the issue before the Court.

13