**MARLIN v. TEXAS CO.**

No. 849.

District Court, N. D. Texas, Fort Worth Division.

Feb. 10, 1939.

Boykin & Seideman and Culbertson & Morgan, all of Fort Worth, Tex., for complainant.

H. S. Garrett, of Fort Worth, Tex., for respondent.

DAVIDSON, District Judge.

This case involves a question of taking oil under a lease of life tenant, the suit being brought by the minor, a remainderman, soon after becoming of age, the questions involved being:

(a) The sufficiency of an attempted lease executed by his mother and father, life tenants.

(b) The sufficiency or validity of a decree of the District Court divesting any title out of him as to the minerals.

(c) The sufficiency of an order of the Probate Court and the guardianship proceedings wherein one Crawley was named as his guardian, this latter proceeding being had also in a further attempt to clear up the title to the minerals covered by the lease executed by his mother and father.

(d) The statute of limitations.

The land originally belonged to the grandfather of plaintiff, who was the father of plaintiff's mother. The grandfather, E. P. Davis, died in Throckmorton County about the 21st of June, 1902, after having made a will in which he left several tracts of land to his daughter, Lila Davis, for her natural life, and after her death to her children. E. P. Davis made similar provisions for the rest of his children. Lila Davis married W. F. Marlin, and the plaintiff, Eli J. Marlin, was born to this union about November 25, 1911. Lila Davis died January 9, 1933.

The will of E. P. Davis provided that the life tenants should have the income from the property. From an examination of the will it is apparent that the "income" referred to such only as accrued while the property was in the hands and custody of the executors, which under the terms of the will the executors were to hold until the particular child had become of legal age. At the time of making this will and of the death of Davis, no land in this portion of the state was producing oil, nor did it have any lease or rental value for mineral purposes, and the testator could scarcely have had in mind such income in the preparation of his will, but had in mind agriculture and ranching.

In about February, 1918, oil having been discovered in this territory, Lila Davis and husband executed, or attemped to execute, an oil lease upon the land of this child, Eli J. Marlin, which had been set apart to him in his grandfather's will.

In 1919 a suit was brought, the same being No. 448 in the District Court of Throckmorton County, in which Eli J. Marlin, the plaintiff herein, appeared along with others as plaintiff, acting through his father and mother as next friend. On February 12, without the issuance of any citation or other process to bring the plaintiff into court, other than the act of his father and mother as next friend, judgment was entered purporting to construe the will of E. P. Davis, in which it was held that the life tenants in said will, including Lila Davis Marlin, had a right to execute mineral leases upon the land covered by such will and allocated to his children, notwithstanding the remainder in the grandchildren, and gave unto the said life tenants possession of all bonuses, rentals or royalties to be derived from any oil or gas lease "which may now be executed or which may hereafter be executed."

Soon after the entry of this judgment, the plaintiff's father and mother, Marlin and wife Lila, living in the State of Wyoming, waived their right to any guardianship proceedings in Throckmorton and Stephens County, Texas, and by written request W. K. Crawley was appointed as guardian of the estate of Eli J. Marlin. The said Crawley also held power of attorney from W. F. Marlin and Lila Marlin to act for them in matters pertaining to their property in Throckmorton and Stephens County. Crawley procured an order from the Probate Court, authorizing him to ratify and confirm the lease as guardian that had theretofore been given by the child's parents, and in which he referred to the judgment of the District Court giving all the proceeds of such lease, including royalty, to the plaintiff's mother, and decreeing that he had no interest in it. The order of ratification was made by the Probate Court in 1921. At the time this order was procured, there was a well being drilled upon the land of Eli J. Marlin in Stephens County. There were two wells drilled upon the land, from one of which several thousand barrels of oil were produced.

On the 9th of August, 1935, the plaintiff Eli J. Marlin, being of age and his mother having been dead about two and one-half years, instituted suit to recover the value of the oil taken from the premises, charging that the various attempts to divest him of title were a fraud upon his rights, and that no title to the oil had passed. The defendant, The Texas Company, insisted that the papers were valid, passing legal title, and that the claim of the plaintiff was barred by the statute of two years limitation.

The will of E. P. Davis, creating the life estate and entailing the property, contained the following provisions: "I give and bequeath to my wife and children all my real estate only for their natural lives, and the remainder to go to the children of my said children. * * * In the event of the death of my wife, then the estate for life herein devised her shall descend to my children for their natural lives, and the remainder to my grandchildren. * * * It is my will and desire and I so bequeath only a life estate in my real property equally according to value among my wife and children, and the absolute fee

simple estate of my real property I bequeath to my grandchildren. * * * My executors shall have possession of my real estate until it has been divided and allotted as above provided, and the net income from it shall become the property of the child to whom it is allotted. * * * It is my will, desire and bequest that my minor children shall have no guardian of the estate hereby bequeathed them, but that my said executors shall have full possession and control. * * * My executors shall out of the income of the estate herein granted to my minor children, care for and provide all necessary means for the education and maintenance of my minor children until they attain the age of twenty-one years, or marry, but each child shall receive only the income from his or her pro rata share of the estate bequeathed herein."

The Texas Company produced from the land of Eli J. Marlin 6232 barrels of oil, and received therefor the sum of $10,674.-93, the one-eighth royalty of which was paid to Lila Marlin.

■ An examination of the terms and provisions of the will impels us to the conclusion that Lila Davis Marlin, under the terms of her father's will, had no greater power or right than that of the ordinary life tenant, and that no special power was vested in her further than to receive such rents and revenues as might be paid to her by the executors before the land was actually turned over to her.

■ Second, I conclude that the judgment of the District Court of Throckmorton County in Cause No. 448 vested no title in Lila Marlin that she did not already have under the provisions of her father's will, which was merely that of a life estate. Her interest as a life tenant was adverse in this suit to the interest of her child, who was the remainderman, and she had no right to act for or represent such child in this proceeding, or to make him a party thereto, and such child is not bound by any judgment procured through such appearance in court.

■ It is insisted that this was the separate property of Lila Marlin, and that a prenuptial agreement between her and her husband gave her the management of it, and that her husband, W. F. Marlin, having no interest, could properly appear as next friend for her child. We do not subscribe to this doctrine. He joined with his wife as next friend in bringing the boy into court. He and his wife were acting jointly. Marlin would not have been a competent juror to have sat in such case; he would not have been a competent Judge to preside at the trial of such case, and he is not a competent or fit person to act as next friend for the minor, and cannot bring such minor into the jurisdiction of the court for the purpose of having title divested out of him, because the interest of the mother and the next friend are adverse. Goldberg v. Zellner, Tex.Com.App., 235 S.W. 870, 871.

■ I conclude that the guardianship proceeding had in Throckmorton County for the purpose of ratifying the lease executed by Lila Marlin and husband was without force or effect. Such action of the Probate Court was only in furtherance of the void judgment of the District Court. The guardian selected said that the Texas Company was drilling a well upon the land of the minor and that the proceeding was had as he understood it to cure the title. The proceeding was not had to cure the title for the benefit of the minor, and he was not represented in such proceeding except by the guardian who held a power of attorney from the minor's father and mother to look after their business in Texas. It was manifestly not in the interest of the minor to divest the proceeds of an oil lease on his land out of him, and the proceeding was void, as was the judgment of the District Court.

■ I find that the circumstances attending the several acts to divest the title out of the minor, Eli J. Marlin, occurred substantially at the same time that The Texas Company located its well upon the property, and that such proceedings were had in order to cure the title so as to make it acceptable to The Texas Company for drilling purposes; that The Texas Company was chargeable with notice of the status of the title and the rights of the minor in the premises, and that it could not have developed said lease as an innocent purchaser in good faith.

The defense of limitation plead by the defendant in the case is one demanding careful consideration. In reply to it, the plaintiff urges two exceptions to the operation of the statute; first, a contract relation, and second, a trust relation.

### Contract Relation.

■ It appears that in about 1927 the Texas Company, a Texas corporation,

transferred all of its assets of whatever kind and character, to the Texas Company of Delaware, and the Texas Company of Delaware took over the business of the Texas Company of Texas and assumed all its obligations and liabilities. 10 Texas Jurisprudence 480 lays down the following proposition: "Where one person, for a valuable consideration, agrees with another to pay the debt of the latter to a third person, such agreement enures to the benefit of the third person, who may maintain an action thereon."

Under such contracts for the benefit of third persons it is held that the four-year period of limitation applies where such contract is in writing, rather than the two-year statute. Vernon's Ann.Civ. St.Tex. arts. 5526, 5527. Butterworth v. Kinsey, 14 Tex. 495; Davis v. Rush, Tex.Civ.App., 288 S.W. 504.

In the case of Waggoner v. Herring-Showers Lumber Co., 288 S.W. 260, the Texas Court of Civil Appeals held the contract to pay the debt of the oil company in consideration of the transfer of all the company's property, real and personal, was not within the statute of frauds requiring such contract to be in writing. By the assumption of liabilities the debt became their own, and they became the principal obligors to the creditors of the company. It has been held that formal acceptance by the creditor or third person is not necessary. Caraway v. Fowler, Tex.Civ.App., 255 S.W. 995.

We think it a reasonable inference and conclusion that The Texas Company of Delaware, by its assumption of all outstanding liabilities, included torts and liabilities of all character that might come to light, as well as those known to the parties at the time, brought them within the four-year statute of limitation.

### Trust Relation.

The plaintiff's mother, Lila Davis Marlin, held the land in trust for her son. This fact was known to the Texas Company. Steps were taken in more than one attempt to cure the title insofar as it affected the present plaintiff, Eli J. Marlin. Eli J. Marlin was at this time a minor, only eight or ten years of age. He testified, and it was not disputed, that he did not know the nature of his grandfather's will, that he had not investigated the title to the Texas lands that came to him, but was of the opinion that they came to him through his mother, they being residents of Wyoming at the time and not in Texas where the land was located; that he did not know that it was entailed property. Being a non-resident of the state up to this period, and a degree of confidence and trust relation naturally existing between himself and his mother, he would not be put upon inquiry to discover any fraud, either constructive or actual, that his mother had perpetrated upon him. He would be entitled to at least a reasonable time to make discovery of any conversion or misappropriation of his property that his mother and others dealing with her had made prior to her death.

Upon the death of his mother, her life tenancy stopped and the plaintiff, Eli J. Marlin, became the owner of the land. Within two years and eight months he brought suit against the Texas Company for the appropriation and conversion of oil from the land leased to it by his mother, such land being leased without legal right or title. Will the elapse of two years and eight months bar his right of recovery?

We are conscious of a line of decisions where there exists an implied trust only, or a trust imposed by law, which hold that the statute of limitation, Vernon's Ann. Civ.St.Tex. art. 5529, runs just as it would in the case of a naked trespasser. Applying the rule announced by this line of decisions, the plaintiff's cause of action is barred. There is an important exception to this rule, however, stated, among other authorities, in 42 Texas Jurisprudence 542: "The statute begins to run from the time when the owner had notice or by the use of reasonable diligence would know of the conversion." Where there has been a relation of trust and confidence between the parties, the statute did not run as against a claim by principal for money collected by an agent until the principal had notice that the collection was made, and a trustee may not, by an act unknown to the beneficiary, repudiate his trust and start the running of limitation.

A situation somewhat analogous to the present is found in Hand v. Errington, Tex.Civ.App., 233 S.W. 567. Hand, upon the death of his wife, sold community property. A daughter sued Hand for one-half of the proceeds, being her mother's interest. Hand insisted that he was merely a constructive trustee and that there was

no actual fraud. The court held that these contentions should not be sustained. The Supreme Court, in passing upon this question, on motion for rehearing 248 S.W. 25 said: "So long as she remained ignorant of her rights no sort of limitation ran against her. * * * Since the suit was filed within less than four years after defendant in error discovered * * * that she was entitled to an interest in the land, neither the four nor the ten-year statute so pleaded was available as a defense thereto."

The case of Bailey v. Glover, 88 U.S. 342, 348, 21 Wall. 342, 22 L.Ed. 636 is a strong case upon limitation as applied to a constructive trust. The court said: "We also think that, in suits in equity, the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." See, also, Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200.

Viewing the case as a whole, we believe that the defendant, in dealing with the plaintiff's mother, and in taking over property to which it had no legal right, became a trustee of this fund to such a degree that limitation would not start until discovered by the plaintiff, or until he had had a reasonable time in which to make such discovery. We do not believe that such time had elapsed under the evidence before us here as to start the running of limitation against him within eight months after his mother's death.

I further find that while the evidence is rather meager and conflicting as to the amount of oil produced from such lease, the witness T. J. Donahue, charged with the books of the defendant, compiled a statement showing the receipts and disbursements of the Texas Company in the development and operation of the Lila Marlin lease, in which it appears that the oil produced was 6232 barrels, for which the company received $10,674.93. There are various suggestions of larger sums being received, but since the burden of proof is upon the plaintiff, and the evidence on the amount of oil produced is

meager, I am taking these figures as the basis, the same being the least amount mentioned and the amount taken from the files and records of the defendant company. Judgment will therefore be ordered in favor of the plaintiff for said sum.