## TEXAS CO. v. MARLIN.

### MARLIN v. TEXAS CO.
No. 9166.

Circuit Court of Appeals, Fifth Circuit.
Jan. 31, 1940.

Rehearing Denied Feb. 23, 1940.

306

H. S. Garrett, of Fort Worth, Tex., for Texas Co.

Stanley Boykin, Preston Shirley, and A. B. Culbertson, all of Fort Worth, Tex., for Eli J. Marlin.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Eli John Marlin, recently of age, brought suit on Aug. 9, 1935, against the Texas Company for an account of oil taken in 1921, 1922, 1923 and 1924 from lands in Stephens County, Texas, under a lease from his mother, she being life tenant of the lands under her father's will and he the remainderman. The lessee who produced the oil was another corporation of the same name whose assets and liabilities had been taken over by the defendant. He recovered a judgment for $7/8$ of the gross sales of the oil with interest at 6% from the time the last oil was produced. Both sides appeal, Marlin averring that he should have had eight eighths of each lot of oil with interest from the date it was produced and at the rate of 10% because the producer was a delinquent trustee; the Texas Company asserting that nothing is recoverable.

A point of venue is raised. Marlin alleged himself to be a citizen of Texas residing in the district where he sued, and the Texas Company a corporation of Delaware authorized to do business in Texas and having an agent and agency in said district. The Texas Company moved to dismiss the suit on its merits, and was overruled, and then for want of parties; and for a better statement of facts and for security for costs; then answered, and amended its answer; and the plaintiff filed an amended and a so-called supplemental petition. On August 10, 1936, a full year after the litigation began, the Texas Company, setting up that it had been misled by the allegation of plaintiff's citizenship, moved to dismiss on the ground that he was a citizen of Wyoming; and since the only ground of jurisdiction was diversity of citizenship, the suit must be filed where one party or the other resided. Since not jurisdiction but only venue is involved, the point was waivable and ought to be held waived. A litigant is bound to investigate such a matter if not satisfied with the venue, not relying on the allegations of his opponent. The Court, however, heard the motion as a fact question and held that the plaintiff at the time of suit was a citizen of Texas and resident in the district. The evidence supports his finding. Venue was both waived and proven.

On the merits the Texas Company strongly urges that Marlin is estopped and barred by a decree in the District Court of Throckmorton County, Texas, made Feb. 12, 1919, when Marlin was a little over seven years old and was living in Wyoming. His mother joined by his father had on Jan. 27, 1917, made an oil, gas and sulphur lease on the land in controversy, but no development had taken place. It was questioned whether she and her mother and brothers and sisters, all life tenants of separate parcels of land passing under her father's will, had authority to make leases and sink wells and enjoy and dispose of the reserved royalties. Two decisions in Texas had been made holding a life tenant could not open up new oil wells any more than new mines and quarries, but could only use the land during his estate for the purposes for which it had theretofore been used. Higgins Oil & Fuel Co. v. Snow, 5

Cir., 113 F. 433, decided in 1902, and Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986, 8 Ann.Cas. 1117, decided in 1905; but there is nothing in this record that indicates that the judge or the parties in the proceeding under discussion knew of them. To settle the question Marlin's mother, "Leila Davis Marlin, joined by her husband, Frank Marlin * * * and Eli John Marlin, a minor, acting by and through his mother and father as next friends Leila Davis Marlin and Frank Marlin", along with each of Mrs. Marlin's six sisters and brothers who were life tenants like herself under their father's will, and their children, also minors, remaindermen like Eli John, as plaintiffs sued Mrs. Hettie Davis Thomas, who was Mrs. Marlin's mother and also a life tenant under the will. The petition stated the question but mentioned no particular lands or leases, and asked a construction of the will with reference to it but pointed out no provision of the will as of doubtful meaning. The prayer was that the Court construe the will so that testator's wife and six surviving children be decreed to have full power and authority to make valid oil and gas leases on any lands in Texas devised to them, and to be the owners of the royalties, rentals and bonuses derived therefrom. A jury was waived and consent given to try the case in vacation, and after a hearing the judge, on the same day the petition was filed, decreed according to the prayer (except that the life tenants could not sell the royalties) and that the minor remaindermen had "no interest in the subject matter of this suit." The special lease with which we are concerned was not mentioned, nor any other, but only the general right to lease was dealt with. Eli John Marlin attacks this judgment, though one of a court of general jurisdiction, as void as to him, because he was not properly a party, was not represented, and as being on its face a fraud. The Texas Company contends it cannot be so attacked unless all the parties to it be brought before the Court. The latter contention was rightly overruled. Marlin is not making an effort by direct attack to set aside and destroy the judgment. His attack is collateral, and amounts only to saying that he was not a party to it and is not bound by it. What happened at the trial was fully related by a disinterested witness, and we think there is no evidence of any wrong purpose in the judge, or any deception of him, or other extrinsic fraud. As to the validity of the representation of this minor, he was not present and was domiciled in another State; his mother and father had joined in a mineral lease of his property and were making a petition praying a relief which would give them his minerals. Instead of suing him, they as his next friends put the minor into the petition as plaintiff with them. Had they made him a defendant as he ought to have been, the Court would have been bound to appoint someone else as guardian ad litem whose duty it would have been to defend and who might have discovered the decisions above mentioned. On the face of the record the minor was not in court as an adversary party, and the judgment does not estop him as against his parents. Nor was the old Texas Company which held the lease of Jan. 27, 1917, a party. Judgments estop parties and privies since the judgment, but not those who obtained their rights from a party before the suit was filed. If the judge had decided Mrs. Marlin had no right to make leases, it would not have bound the Texas Company. Since estoppels must be mutual, the Texas Company can hold no one bound by it. Horton v. Hamilton, 20 Tex. 606; Bertrand v. Bingham, 13 Tex. 266; McCord v. Bass, Tex.Com.App., 223 S.W. 192; Dull v. Blackman, 169 U.S. 243, 248, 18 S.Ct. 333, 42 L.Ed. 733; Keokuk & Western R. Co. v. Missouri, 152 U.S. 301, 317, 14 S.Ct. 592, 38 L.Ed. 450; Freeman on Judgments, § 159; Greenleaf on Evidence (13 Ed.) § 524. Therefore the question attempted to be settled is still open as between Marlin and the Texas Company, and we have no hesitation in holding that it was decided wrongly. There is nothing whatever in the will which was construed that attached any unusual powers or incidents to the life estates it created. When the will went into effect no oil wells had ever been sunk on any of the lands, which had been used for grazing and farming, and oil and gas wells had not been at all contemplated. The life estates and remainders stood under the law of Texas, and the right to open wells on the lands was in the remaindermen and not in the life tenants. Higgins Oil & Fuel Co. v. Snow, supra; Swayne v. Lone Acre Oil Co., supra; Amarillo Oil Co. v. McBride, Tex.Civ.App., 67 S.W.2d 1098.

 The Marlin family still residing in Wyoming, and Mrs. Marlin being represented in Texas by one Crawley under a general power of attorney, she requested him to become the guardian of the property

in Texas of Eli John, and he applied to the County Court of Throckmorton County, where some of the property was, for letters of guardianship. The parents waiving their right, Crawley was appointed May 16, 1919. In 1920 the guardianship was regularly transferred to Stephens County. There on Aug. 18, 1921, the guardian petitioned the County Court, stating that the District Court of Throckmorton County had decided that the minor's mother as life tenant in several described tracts had power to make mineral leases, and she and her husband had made leases to the Texas Company on four described tracts of land, and it was advisable that the minor's interests also be leased to the Texas Company, which had expended large sums in development; and he prayed authority to lease on such terms as the court thought right and proper. After due proceedings the court heard the matter on Sept. 12, 1921, and finding that the Texas Company was then drilling on the land here in controversy and expending large sums, and had agreed to pay the guardian $150 for a lease on the minor's interest, and that it was advisable and to the minor's best interest, ordered and decreed that the guardian be "authorized and directed to enter into, adopt, ratify and confirm" the leases Mrs. Marlin and her husband had made, copies thereof being attached to the order. The guardian thereupon executed a formal instrument attested for record which referred to the order, and in consideration of $150 in hand paid did "ratify, confirm, and adopt the above mentioned leases in their entirety, which said leases are by reference made a part hereof, and does hereby agree that said leases shall cover and are hereby made to cover and extend to any and all rights the said Eli John Marlin may have in said lands and in all estates he may have in the same, whether now existing or in expectancy * * * and the same shall be subject to and controlled by the terms of the respective leases in every particular." Now the lease here in controversy provides as to royalties: "Subject to the royalties hereinafter mentioned, there is hereby granted and conveyed to said lessee all of the oil, gas and sulphur in and under said land. The royalties above mentioned shall be (a) on oil, a quantity equal to one-eighth of all produced and saved, the same to be delivered at the wells, or to the credit of the lessor in the pipe line to which the wells may be connected. * * * If the interest owned by the lessor in said land is or shall prove to be less than the entire fee, the royalties and moneys herein provided for shall be delivered to or paid to the lessor in the proportion only that the interest of the lessor bears to the entire fee." Marlin contends that this order and deed are wholly void, because they do not amount to leasing the minor's minerals as the statute authorized,[1] but gave them away to Mrs. Marlin and her lessee. Because the court would have no right to do this we think the order and deed following it ought not to be so construed. A venerable maxim constrains us to seek a construction such ut res magis valeat quam pereat. With the lease which we have quoted before him, the County Judge directed the guardian to "enter into, adopt, ratify and confirm" it. This means to become a party to it, an additional lessor. The minor's mineral interests were thus leased on the exact terms stated in his mother's lease. The result of "entering into" the lease with Mrs. Marlin was that she was to receive royalties proportional to her interest in the minerals and Eli John was to receive royalties in proportion to his interest in the minerals, according to the provision above quoted from the lease. This would not be illegal, but just and right. The County Judge did not and could not determine what Eli John's proportion should be. Apparently the old Texas Company and Mrs. Marlin thought she had the fee in the minerals, for it paid all the royalties over to her. In this they were wrong, for the fee to the minerals was in Eli John, and he should have received the royalties.

 After the date of the Court's order and Eli John's joining by his guardian in the leases, they became lawful as to him, and the case stood as though the remainderman had sunk the wells and the life tenant was claiming participation. According to the cases above cited, followed recently in our decision, Davis v. Atlantic Oil Producing Co., 5 Cir., 87 F.2d 75, the life tenant is entitled to the interest that could be earned on the royalty payments during her life. It follows that the Texas Company would not be liable to Eli John for any interest during that time, but would owe him interest only after his mother's death.

 The order of the County Court is also attacked for extrinsic fraud. We

---

[1] Act of March 24, 1919, Chap. 119. Rev.Stats. § 4192.

find no sufficient evidence of it. Such orders of the probate courts lie at the foundation of many land titles, and they should not be lightly upset. There may have been a purpose to set up Mrs. Marlin's lease to the Texas Company and confirm the royalties to her, but nothing was misrepresented to the County Judge or concealed from him. He was asked to order leases on such terms as he saw fit, and he ordered an entry into and adoption of those already made, which as we have interpreted his act was both fair and wise; at least the matter lay in his discretion, as did the amount of bonus to be charged, and his judgment on it must stand.

 Many contentions have been raised about the application of the statutes of limitation. The case is brought against the Texas Company, a corporation of Delaware, which on April 19, 1927, accepted a deed from the Texas Company, a corporation of Texas, to all the latter's assets, containing these words: "By the acceptance hereof the grantee assumes and agrees to pay when due all of the debts and outstanding liabilities of the grantor, subject to any defenses which the grantor could make against claims asserted or to be asserted." The Texas Company of Texas was the lessee which produced the oil under the leases. The corporation which was sued was liable only on its contract of assumption, and the suit is on it. Wilson v. Alliance Life Ins. Co., 5 Cir., 108 F.2d 150. It is a contract in writing, though not signed by the grantee, and four years is the limitation applicable to a suit on it. Revised Stats., Art. 5527; Smith v. Nesbitt, 111 Tex. 186, 230 S.W. 976. It was argued that the original Texas Company could have asserted as a defense the two year limitation of Art. 5526, applicable to conversions of property and debts not evidenced in writing, and that the present Texas Company can do the same under the terms of the assumption contract. But under our construction of the guardian's adoption of the lease of Jan. 27, 1917, the oil was not converted but was produced by authority of the remainderman, and the obligation is to pay him under the terms of the adopted lease. Four years would be the limitation applicable to the debt. The case as proven is not barred.

 It follows that for oil produced subsequent to the adoption of the lease there ought to be a recovery of the one-eighth royalty, but without interest during the continuance of the life estate. The lessee was no trustee, and the rate of interest since the life estate fell in ought to be the legal rate, six percent. A small quantity of oil was produced before the guardian adopted the lease. Its status has not been specially argued, and we leave it undetermined.

The judgment is reversed on the main appeal only and the cause remanded for further proceedings consistent with this opinion.