Curtis M. SWIFT, Plaintiff,

Curtis M. Swift, Legal Guardian and Custodian of Kimberly Lorraine Swift, a minor, Applicant for Intervention,

v.

Hampden M. SWIFT and Mercantile Trust Company, National Association, Defendants.

No. 71–C–1380.

United States District Court, E. D. New York.

July 11, 1973.

Hall, Dickler & Howley, New York City by Paul Sarno, New York City, of counsel, for plaintiff.

James W. McDonald, Jr., Homestead, Fla., for intervening plaintiff.

Havens, Wandless, Stitt & Tighe, New York City, for defendant Hampden M. Swift by John E. Haley, Gerald J. Fields, New York City, of counsel.

Cowan, Liebowitz & Latman, New York City, for defendant Mercantile Trust Co., National Association by Michael F. Maschio, New York City, of counsel.

JUDD, District Judge.

## MEMORANDUM AND ORDER

A motion for intervention and for the appointment of a guardian *ad litem* has been made on behalf of Kimberly Lorraine Swift, a minor daughter of plaintiff Curtis M. Swift.

### Facts

This is a diversity action by plaintiff against his brother, Hampden M. Swift, and Mercantile Trust Company, National Association, seeking to cancel a trust agreement executed by plaintiff at a time when he was a patient in a mental hospital, and to require an accounting from defendants as trustees. For the purposes of the pending motion, the allegations in pleadings and affidavits and statements on oral argument may be treated as facts.

Plaintiff alleges that he was mentally incompetent at the time the trust agreement was executed (January 20, 1969), or in the alternative, that the agreement was executed under duress because his brother Hampden would not release him from the hospital unless and until he executed the trust agreement.

A memorandum by one doctor recommended on January 23, 1969 that plaintiff be kept in the hospital for another twelve months, and stated that he was delusional. Another doctor on January 25, 1969 said that his prognosis was "highly guarded." The dates of these memoranda were a few days after the execution of the trust agreement and a few days before the execution of the amendment.

The trust agreement conveys to the trustees 12,000 shares of common stock of John S. Swift Company, Inc. and $130,000 of municipal revenue bonds, and provides for the trustees to pay from the income (a) all federal and state income taxes, (b) sums which they determine to be due from plaintiff under a separation agreement with his former wife, and (c) such net income and principal as the trustees in their absolute discretion deem necessary for plaintiff's "support, medical care, and welfare." There are also provisions for distributing the remaining net income at plaintiff's written direction and for accumulating any undistributed income.

The principal of the trust, after payment of debts, funeral expenses, and estate and inheritance taxes, was to be distributed as plaintiff might appoint by will, or in default of appointment, to plaintiff's blood descendants, or in the absence of such blood descendants to his brothers, Hampden M. Swift and John S. Swift, Jr. Hampden Swift was given power to remove any corporate trustee, approve its accounts, and appoint a successor corporate trustee. Power to alter, amend or revoke the trust agreement was limited by requiring the consent of the individual trustee. The agreement was executed in New York, provided that it should be governed by the laws of Illinois, where Hampden lived, and was witnessed by a doctor and another employee of the hospital.

Ten days later, plaintiff executed an amendment to the trust agreement, and terminated his power to appoint the principal by will except as required to comply with the separation agreement previously made by plaintiff; the separation agreement required him to leave at least one-third of his estate to his daughter Kimberly if she was under twenty-one when he died. The remainder of the principal was to be distributed equally *per capita* among the lawful blood descendants of Hampden M. Swift and John S. Swift, Jr. The amendment was witnessed by the same persons who witnessed the original trust agreement, and Hampden Swift annexed his consent to the amendment.

John S. Swift, Jr., is 59 years of age and has no children. Hampden M. Swift has thirteen children. Kimberly, plaintiff's child, is eleven years old.

Plaintiff was a resident of New York when the action began, but is now a resident of Florida. He has had legal custody of his daughter under a Florida court order since February 23, 1973. Hampden's counsel offered in court on the argument of the motion to have him consent to an amendment of the trust so that the principal would pass to plaintiff's daughter Kimberly even if she is over 21 when her father dies, instead of to Hampden's children.

Earlier in the litigation, Mercantile Trust Company, a Missouri national bank, moved to dismiss the complaint against it for improper venue under 12 U.S.C. § 94, asserting that it did not in fact execute the agreement in New York as would appear from its terms. The late Judge Rosling denied the motion, with leave to renew at a later stage of the litigation, and extended the corporate trustee's time to answer until after the adjudication of the issues between plaintiff and his brother. Judge Rosling pointed out that Hampden's power to remove the corporate trustee made it unnecessary for the corporate trustee to take part in the initial phases of the litigation. Hampden was a director of Mercantile Trust Company at the time the trust agreement was executed, and is still a member of its Advisory Board.

John S. Swift Company, Inc. is a printing company founded by the father of Curtis and Hampden Swift. The President is Hampden Swift. After the application for intervention on behalf of Kimberly Swift, the company failed to pay its usual May dividend. Plaintiff is entitled to the income from two other trusts besides the one in this suit.

Plaintiff's daughter Kimberly is a necessary party in any action for accounting by the defendant trustees. The results of this action, if plaintiff is successful in terminating the trust, would not only terminate her interest in the trust principal, but would enlarge her father's right to disinherit her.

Kimberly's rights are not confined to those set forth in the application for intervention filed by her father as legal guardian. Nor are her interests necessarily the same as her father's. Among other concerns which Kimberly may have are:

1. The possibility that her father may desire or might be required to treat her more generously than the trust agreement provides;

2. Protection against dissipation of the assets by her father if the trust is terminated;

3. An opportunity to participate in any settlement of the litigation, so as to protect her own interest as remainderman and presumptive heir;

4. An opportunity to seek the substitution of an impartial trustee if the trust continues in effect;

5. Consideration of possible diversification of the trust investments.

### Discussion

█ From the facts set forth above, it appears that the daughter Kimberly is entitled to intervention of right under F.R.Civ.P. 24(a)(2), since she has an in-

terest under the trust agreement, "the disposition of the action may as a practical matter impair or impede [her] ability to protect that interest," and her interest cannot be "adequately represented" by her father because of his conflicting interest. To the extent that the trust now operates for her benefit, the action might terminate the trust without her having an opportunity to be heard.

It would not be proper to terminate a beneficiary's interest without making the beneficiary a party. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); DeKorwin v. First Nat. Bank of Chicago, 94 F.Supp. 577 (N.D. Ill.1950). See Peterson v. United States, 41 F.R.D. 131, 133 (D.Minn.1966.)

The daughter may also be entitled to permissive intervention under F.R.Civ. P. 24(b)(2), since her interest in the trust fund depends on the same questions concerning her father's mental competency and duress that are involved in the main action. Permitting her intervention at this time will not delay or prejudice the adjudication of the rights of the other parties.

Her uncle's offer to permit amendment of the trust to make her the sole remainderman does not moot the issue, for her father has not consented to the validity of the trust as so amended.

In view of the diversity of interest between father and daughter, she should be represented in this action by an independent guardian *ad litem,* and should not be confined to the provisions of the proposed complaint presented on her behalf by her father.

The request by Mercantile Trust Company to extend Judge Rosling's order so as to defer its answer to the complaint of the intervenor should await the actual filing and service of the daughter's pleading.

It is ordered that the application for intervention of Kimberly Lorraine Swift, a minor, be granted; that Francis E. Dorn, Esq. be appointed guardian *ad litem* to represent her in this action; and that he be allowed thirty days from the date of this Memorandum and Order in which to file an appropriate pleading on her behalf.