557 F.2d 170
 M. S., on behalf of herself and all others similarly
situated, Appellant,
v.
Robert WERMERS, Doty Brown, John Mitchell, Ira Wintrode,
Stewart Steele, Donald Kelly, N. R. Whitney, J. T.
Elston and Pat Tlustos, Appellees.
 No. 76-1407.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1976.
Decided June 29, 1977.
 
 Michael A. Wolff, Black Hills Legal Services, Inc., Rapid City, S. D., for appellant; Ben Stead and Gregory D. Lewis, Rapid City, S. D., on brief.
 John K. Konenkamp, Deputy State's Atty., Pennington County, Rapid City, S. D., for appellees.
 Before WEBSTER and HENLEY, Circuit Judges, and VAN PELT, Senior District Judge.*
 WEBSTER, Circuit Judge.
 
 
 1
 M.S., an otherwise unidentified minor female, appeals from the order of the District Court dismissing her action following her refusal to give notice to her parents of a pending proceeding for the appointment of a guardian ad litem in connection with her complaint for declaratory judgment. At the time the action was filed appellant was fifteen years of age and unmarried.
 
 
 2
 In her complaint, appellant sought to maintain a class action on behalf of herself and all minors residing in Pennington County, South Dakota, who are denied contraceptive services or supplies by the Pennington County Health Department Family Planning Clinic because such minors lack parental consent to receive such services.[1] She brought her action under 42 U.S.C. § 1983, claiming that the Clinic's policy impermissibly infringes upon the right to privacy as guaranteed to her and other class members by the Fourteenth Amendment.
 
 
 3
 The District Court dismissed the action without having reached the merits of appellant's claim. The court concluded that a guardian ad litem should be appointed for appellant and that her parents should be notified. Dismissal of the action occurred when appellant declined to give such notice.[2] In this appeal, appellant contends that the District Court abused its discretion (1) in refusing to let her proceed without appointment of a guardian ad litem and (2) in dismissing the action for failure to give her parents notice of the guardianship proceedings.
 
 I.
 
 4
 We think it should be obvious at the outset that if appointment of a guardian ad litem is required, or even permitted by law, then it was not error for the District Court to order a hearing for such purpose.
 
 
 5
 South Dakota law provides that "(a) minor may enforce his rights by civil action * * * in the same manner as a person of full age, except that a guardian must be appointed to conduct the same." S.D. Codified Laws § 26-1-3 (1976). Another section of South Dakota law provides that when an infant does not have a guardian to sue on his behalf, "he may sue by a guardian ad litem. The court shall appoint a guardian ad litem for an infant * * * not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant * * * and may make such appointment notwithstanding an appearance by a general guardian." (Emphasis supplied.) S.D. Compiled Laws Ann. § 15-6-17(c) (1967). The provisions of this section are substantially identical to the provisions of Rule 17(c), Federal Rules of Civil Procedure.[3] Appointment of a guardian ad litem is considered to be discretionary under the Federal Rules, provided the District Court enters a finding that the interests of the minor are adequately protected in the event it does not make such appointment. See Noe v. True, 507 F.2d 9, 11-12 (6th Cir. 1974); Jacobs v. Board of School Comm'rs, 490 F.2d 601, 603-04 (7th Cir. 1973), vacated as moot, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); Roberts v. Ohio Casualty Ins. Co., 256 F.2d 35, 39 (5th Cir. 1958). Regardless of whether state or federal law should be applied,[4] the District Court was bound to consider the appointment of a guardian ad litem for the minor plaintiff and clearly has the power to appoint one in her behalf.
 
 
 6
 While we have found cases upholding a district court's finding that no guardian ad litem was necessary in a given situation, see Laundry Workers Union, Local 93 v. Mahoney, 491 F.2d 1029, 1033 (8th Cir.) (en banc), cert. denied, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974); T H v. Jones, 425 F.Supp. 873, 877 (D.Utah 1975), aff'd, 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976); Baird v. Bellotti, 393 F.Supp. 847, 850 n.5 (D.Mass.1975), vacated on other grounds, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); Jacobs v. Board of School Comm'rs, supra, 490 F.2d at 604, our attention has been directed to no case holding that a district court abused its discretion in ordering such appointment.
 
 II.
 
 7
 Our inquiry does not end here, however, because the District Court ordered, over appellant's objection, that notice of the hearing on the court-ordered application for guardian ad litem be given to the parents of the minor. When she refused to give such notice, the case was dismissed on the court's own motion. We conclude, under the circumstances here presented, that the order of dismissal was an abuse of discretion and must be vacated.
 
 
 8
 A district court has power to dismiss an action for failure of the plaintiff to comply with "any order of court." Fed.R.Civ.P. 41(b). Such action may be taken on the court's own motion, Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95, 96 (8th Cir. 1971); see Stanley v. Continental Oil Co., 536 F.2d 914, 916-17 (10th Cir. 1976), and may be exercised under the court's inherent power to control its docket, Pond v. Braniff Airways, Inc.,453 F.2d 347, 349 (5th Cir. 1972); see also Link v. Wabash R.R. Co., 370 U.S. 626, 629-33, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), and to protect the integrity of its orders, Fendler v. Westgate-California Corp., 527 F.2d 1168, 1170 (9th Cir. 1975). See generally 15 A.L.R.Fed. 407 (1973). The power to dismiss under Fed.R.Civ.P. 41(b) is not unlimited, however. It has been described as "the most severe sanction that a court may apply." Durham v. Florida East Coast Railway Co., 385 F.2d 366, 368 (5th Cir. 1967); see Boazman v. Economics Laboratories, Inc., 537 F.2d 210, 212 (5th Cir. 1976). In reviewing such an order we consider whether in the exercise of its power the district court has exceeded the permissible range of its discretion. Moore v. St. Louis Music Supply Co., 539 F.2d 1191, 1193 (8th Cir. 1976); Grunewald v. Missouri Pacific R.R. Co., 331 F.2d 983, 985 (8th Cir. 1964).
 
 
 9
 One approach is to ask whether there has been "a clear record of delay or contumacious conduct by the plaintiff * * *." Graves v. Kaiser Aluminum & Chemical Co., 528 F.2d 1360, 1361 (5th Cir. 1976). It can hardly be suggested that such conduct was present in this case. While she opposed the appointment of a guardian ad litem and sought to demonstrate that no guardian was required or needed under either state or federal law, appellant in the alternative asked that her counsel be appointed as guardian ad litem or that a former director of family planning services, Jean Dooner, L.P.N., be appointed. When these alternatives were rejected, appellant respectfully informed the court that she would suffer dismissal rather than abandon the claims to privacy which her lawsuit sought to vindicate.
 
 
 10
 Another legitimate inquiry is whether dismissal was bottomed upon the plaintiff's refusal to obey an invalid or improper order. See Allied Air Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441 (2d Cir.), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); Michael v. Clark Equipment Co., 380 F.2d 351 (2d Cir. 1967); Original Ballet Russe v. Ballet Theater, Inc., 133 F.2d 187 (2d Cir. 1943). See also First Iowa Hydro Electric Coop. v. Iowa-Illinois Gas & Electric Co., 245 F.2d 613, 628 (8th Cir.), cert. denied, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); 15 A.L.R.Fed. 407, 428-30 (1973).
 
 
 11
 Appellant contends that her parents could not properly act as guardians ad litem for her in this case because their interests are adverse to hers in that appellant claims the right to obtain prescription contraceptives free from their consent. When there is a potential conflict between a perceived parental responsibility and an obligation to assist the court in achieving a just and speedy determination of the action, parents have no right to act as guardians ad litem. See Fong Sik Leung v. Dulles, 226 F.2d 74, 82 (9th Cir. 1955) (Bolt, J., concurring). District courts have been alert to recognize and guard against this type of conflict. See, e. g., United States v. E. I. DuPont deNemours & Co., 13 F.R.D. 98, 105 (N.D.Ill.1952); Swift v. Swift, 61 F.R.D. 595, 598 (E.D.N.Y.1973); Marlin v. Texas Co., 26 F.Supp. 611, 614 (N.D.Texas 1939), rev'd on other grounds, 109 F.2d 305 (5th Cir. 1940); United States v. Noble, 269 F.Supp. 814, 816 (E.D.N.Y.1967).
 
 
 12
 It seems obvious in this case that appellant does not believe that her parents will give their consent to her receiving prescription contraceptives; otherwise no litigation would have been required in the first instance.[5] the required notice to her parents has had an obvious chilling effect upon appellant's efforts to vindicate her constitutional rights. Parents should not be appointed to act as guardians ad litem in litigation challenging a grant of parental veto power. Since it would be inappropriate to appoint the parents in this case, it was equally inappropriate and unnecessary to condition the further progress of the lawsuit upon notification to the parents of the hearing on the appointment.
 
 
 13
 Appellant brought this action anonymously, and to require her to disclose her participation to her parents at this stage would substantially nullify the privacy right she seeks to vindicate. See Roe v. Ingraham, 364 F.Supp. 536, 541 n.7 (S.D.N.Y.), rev'd on other grounds, 480 F.2d 102 (2d Cir. 1973). See also N.A.A.C.P. v. Alabama, 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). We think that the minor's asserted interest in privacy, which would be undercut by such notice, must outweigh any desire on the part of the District Court to accommodate parental concerns, at least at this stage of the proceedings.[6] Since the refusal to obey was thus not caused by indifference to or neglect of proper procedural orders, but was compelled in order to protect the integrity of the minor's claimed right to privacy, the order of dismissal was an abuse of discretion.
 
 
 14
 We decline the invitation of the litigants to predict our views on the merits of this case. We simply hold that the appointment of appellant's parents as guardians ad litem would be clearly inappropriate; that notification to the parents of the guardian ad litem proceeding would compromise appellant's claimed right of privacy before it could be established and should not have been ordered; and that dismissal for refusal to obey an improper order in these circumstances was an abuse of discretion. The order of dismissal is vacated. On remand, the District Court is free to appoint a guardian ad litem capable of preserving appellant's anonymity or to appoint no guardian at all if it should choose to reconsider its finding that a guardian ad litem is necessary.[7]
 
 
 15
 HENLEY, Circuit Judge, dissenting.
 
 
 16
 I agree with the majority opinion that it was proper for the district court to consider the appointment of a guardian ad litem for the minor plaintiff, and that the court clearly had the power to appoint one in her behalf. I respectfully disagree that it was an abuse of discretion for the court to dismiss the action for failure to provide plaintiff's parents with notice of the guardianship proceedings.
 
 
 17
 While it may be inappropriate to appoint parents to act as guardians ad litem in litigation challenging a grant of parental veto power, it does not follow that it is equally inappropriate to condition the further progress of the lawsuit upon notification to the parents of the hearing on the appointment of a guardian ad litem. There is a crucial distinction between appointing parents to serve as guardians ad litem and notifying them that their minor child is involved in serious litigation for which a guardian ad litem may be appointed. Of course, both of these are an additional step removed from the merits of this matter concerning the requirement of parental consent to obtain prescription contraceptives against which the plaintiff seeks to assert a right of privacy.
 
 
 18
 The majority quite properly has declined an invitation to decide the merits of the case. Yet a decision of the narrow issue before us calls for at least a brief consideration of the nature of the basic controversy.
 
 
 19
 Plaintiff, an unmarried fifteen year old female, seeks judicial declaration of an untrammeled constitutional right at public expense[1] to fornicate with benefit of prescribed contraceptive supplies. Stated otherwise, she seeks vindication of an alleged constitutional right to put contraceptives to their intended use, notwithstanding the combined objection of both her parents and the state.[2]
 
 
 20
 It must be conceded that a number of fundamental constitutional rights have been expressly extended to minors in recent years. Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). See also Jones v. T. H., 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976). However, not all constitutional rights have been made equally applicable to minors as to adults, and it is well established that the activities of children may be more highly regulated than those of adults. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195, reh. denied, 391 U.S. 971, 88 S.Ct. 2029, 20 L.Ed.2d 887 (1968); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645, reh. denied, 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090 (1944). In particular, a state may determine that a child is not possessed of full capacity for individual choice.
 
 
 21
 South Dakota law contains numerous provisions designed to protect minors in matters of sex. It is observed that a minor female is deemed incapable of consenting to marriage prior to age sixteen. S.D. Compiled Laws Ann. § 25-1-9. A person sixteen years of age or less is presumed incapable of consenting to sexual intercourse, and significantly, such sexual activity with a female sixteen or under constitutes rape. S.D. Compiled Laws Ann. § 22-22-1.[3]
 
 
 22
 The legality of such statutes is not in question here and they are perhaps typical of state enactments in the field.
 
 
 23
 In addition to restriction by the state, minors are subject to parental custody and control. "Constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic to the structure of society. It is cardinal that the custody, care and nurture of the child reside first in the parents whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Carey v. New York, --- U.S. ----, ---- - ----, 97 S.Ct. 2010, 2028, 52 L.Ed.2d 675 (1977).
 
 
 24
 Judicial decisions have enveloped the sanctity of the family and parental authority with constitutional protection because the institution of the family has long been recognized as a cornerstone of our law. Moore v. East Cleveland, --- U.S. ----, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Ginsberg v. New York, supra; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).
 
 
 25
 The right to custody and control over a minor child accrues to parents in reciprocation for their duty to support, educate and protect that child. Consonant with this right, parents may need to know that their minor child has embarked upon a course of litigation, particularly where they probably will not serve as guardians ad litem and where the outcome of the action need not be fatally affected by their awareness of it. Assuming that a minor's institution of litigation without parental knowledge marks a fracture in the family structure, it is clearly within the scope of their protected power for parents to attempt to make amends and reinforce the family unit. They may seek to reopen closed lines of communication with their child or to rehabilitate common interests they once shared.
 
 
 26
 To fulfill their protective obligation, parents at least should be entitled to establish that a lawsuit instituted by their minor child is a product of that minor's own conscientious decision made in her capacity as a maturing young citizen, and not the result of undue influence from outside sources, well meaning though they may be.
 
 
 27
 The narrow issue presented at this time is whether in the circumstances of this case the fifteen year old plaintiff has an absolute right to conduct litigation free from her parents' knowledge in order to avoid an alleged chilling effect parental knowledge might have on the right of privacy she ultimately wishes to establish. Considering the cautious recognition by courts of constitutional rights that may be independently asserted by a minor, coupled with the protective nature of South Dakota's policy toward fifteen year old girls, I remain unconvinced that the minor plaintiff's participation in this lawsuit is fully protected by a right of privacy.[4] On balance, a minor's right to conduct litigation in private, or be protected from the chill of notice to the parents does not outweigh the parents' right and duty to advise and protect their child, and to preserve the integrity of the family.
 
 
 28
 Limited parental participation would be in no way determinative of the merits in this case, even though a similar balancing procedure may be employed when hearing on the merits is reached. The court at this juncture is called upon only to weigh the right of a minor to institute a legal action in private against her parents' right to know that their child has become a party plaintiff. Correspondingly, a determination of the merits will require a balancing of the minor plaintiff's right of privacy to obtain prescription contraceptives against the right of her parents to exercise a veto power upon her acquisition of such contraceptives pursuant to the policy of the county health clinic. Though the two decisions may involve the analysis of similar elements, a finding in favor of the parental right at this stage of the proceedings would not preclude a different finding upon consideration of the merits of the case.
 
 
 29
 Until a decision on the merits has been reached, both the minor's asserted right of privacy involving access to prescription contraceptives, and the parents' right to custody and control over their daughter should be protected to the fullest extent possible. The minor's right to litigate could be protected by appointing someone other than the parents as guardians ad litem. The parents' right could be protected by informing them of the legal action instituted by their child. To permit parents to remain unaware of major litigation involving their child not only prevents them from counselling with the child but also imparts to the whole proceeding an overcast of deception undermining family solidarity and making suspect the court itself.
 
 
 30
 Experience teaches that wilful children dread parental confrontation. I would not elevate that dread to constitutional status and would prefer to find no abuse of discretion in the district court's order requiring notice to the parents. I would reverse only insofar as the judgment dismisses with prejudice.
 
 
 
 *
 The Honorable Robert Van Pelt, Senior Judge, United States District Court for the District of Nebraska, sitting by designation
 
 
 [1]
 The Clinic policy makes prescription contraceptive supplies available to minors only upon obtaining parental consent; non-prescription supplies are available without such consent
 
 
 [2]
 Appellees filed a motion to dismiss the complaint on April 28, 1975. Appellant then filed a motion for summary judgment. The District Court held a hearing on both motions on May 16, 1975, at which time the parties stipulated there were no issues of material fact in the case and that the matter was appropriate for summary judgment. They agreed to submit the matter on cross-motions for summary judgment. The District Court gave appellees the opportunity to submit a brief on the issue of whether a guardian ad litem should be appointed for appellant. Appellees declined to submit a brief on that issue; appellant had previously briefed the issue
 On February 9, 1975, the District Court held a hearing at which it took testimony on the issue of whether the State of South Dakota was an indispensable party and heard arguments on the propriety of a class action.
 On March 5, 1976, the District Court issued a memorandum opinion and order stating its finding that appellant's interests needed additional protection and that a guardian ad litem must thus be appointed. It directed appellant's counsel to make application to the court for appointment of a guardian ad litem for appellant no later than March 15, 1976. 409 F.Supp. 312. The order further required that notice of the time and place of the hearing on appointment of a guardian ad litem be given to appellant's parents. Finally, the order stated that in the event application was not made by March 15, 1976, the action would be dismissed.
 On March 17, 1976, appellant filed motions (1) to vacate the order requiring appellant to make application for appointment of a guardian ad litem; (2) in the alternative, to appoint appellant's counsel as her guardian ad litem; (3) in the alternative, to appoint Jean Dooner, L. P. N., former director of the Western South Dakota Community Action Program Family Planning Services, as guardian ad litem; and (4) to vacate the order requiring notice be given to appellant's parents regarding the hearing on the guardian ad litem application. That same day, the District Court denied all of appellant's motions and ordered appellant's attorney to give appellant, her parents, and Jean Dooner notice by personal service of a hearing, scheduled by the court for March 26, 1976. The order stated that failure to give such notice would be cause for dismissal of the action. On March 22, 1976, appellant's counsel certified that he personally served appellant and Jean Dooner with notice of the hearing, but that he did not serve such notice upon appellant's parents. By an order dated March 25, 1976, the District Court dismissed the action, noting that appellant's counsel had certified that appellant would suffer dismissal of the action rather than make service of notice on her parents.
 
 
 [3]
 Fed.R.Civ.P. 17(c) provides:
 (c) Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.
 
 
 [4]
 To the extent that the first quoted section of South Dakota law, S.D. Codified Laws § 26-1-3 (1976), is nondiscretionary, and therefore more demanding than Fed.R.Civ.P. 17(c), a problem could develop in terms of which rule should be applied. It has been held that such state rules are procedural rather than substantive and hence need not be applied in federal courts. See Travelers Indemnity Co. v. Bengtson, 231 F.2d 263, 265-66 (5th Cir. 1956). See also Slade v. Louisiana Power & Light Co., 418 F.2d 125, 126 (5th Cir. 1969), cert. denied, 397 U.S. 1007, 90 S.Ct. 1233, 25 L.Ed.2d 419 (1970); Roberts v. Ohio Casualty Ins. Co., 256 F.2d 35, 38-39 (5th Cir. 1958); Smith v. Langford, 255 So. 294, 296 (Fla.App.1971); 3A J. Moore, Federal Practice P 17.26 (2d ed. 1974); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1571, at 782-83 (1971)
 
 
 [5]
 Appellant submitted an affidavit to the District Court, stating that she is unable to obtain the consent of either of her parents for contraceptive services and supplies
 
 
 [6]
 It is difficult to fault the District Court for wanting parental awareness and possible assistance in the selection of a guardian ad litem for appellant. On the other hand, such notice is not required by state or federal law, and the parents will not themselves be appointed. Notice to the parents is unnecessary to the selection of a guardian ad litem to prosecute this action
 
 
 [7]
 We express no views on the class action claims. The District Court should pass on this matter in the first instance and should do so at an early stage of the proceeding. See Fed.R.Civ.P. 23
 
 
 [1]
 A modest fee of $2.00 is charged for prescription service to those able to pay; otherwise the service is free
 
 
 [2]
 While strictly speaking the merits are not before us, it is noteworthy that in different context Mr. Justice Stevens joined by Mr. Justice White has described such an argument as "frivolous." Carey v. New York, --- U.S. ----, ----, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)
 
 
 [3]
 To be sure, it is not necessarily illogical both to condemn statutory rape and to deny contraceptives to those infant females who by statute may not consent to intercourse, but it has been said that it is unreasonable to assume that the state has prescribed pregnancy as punishment for fornication. Carey v. New York, id. at ----, 97 S.Ct. 2010
 
 
 [4]
 The filing of a lawsuit by its very nature is a public act which initiates and becomes a part of a public record. Notwithstanding plaintiff's attempt to preserve her anonymity by utilizing the initials M.S., in availing herself of access to the court and other privileges accorded a party plaintiff, she in effect relinquished any expectation she may have had of total privacy in the determination of this case